FILED IFP

SEP 24 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

LB

C 20 - 06762

Harris L. Winns
San, Jose CA.
*Plaintiff, Pro Se*

𝔘nited 𝔖tates 𝔇istrict 𝔠ourt 𝔣or
the 𝔑orthern 𝔇istrict of 𝔠alifornia
𝔒akland 𝔇ivision

**HARRIS L. WINNS**
Plaintiff, an Individual
  vs.
**EXELA ENTERPRISE
SOLUTIONS, INC.**
Business Process Automation,
and DOES 1-140 Defendants

Case No.:
**Complaint for Damages arising from - 1)
Discrimination in Violation of Title VII of
the Civil Rights Act of 1964, 42 U.S.C. §§§
2000e-*et seq.* unlawful employment practices,
2000e-3(a) retaliation, 2000e-2(m) "motivating
factor", 2)Section 1981 (a) same rights as
enjoyed by white citizens, (c) protected
against nongovernmental discrimination or
impairment, "But-for" causation of injury,
3)Section 1985(2)(3) Intimidation, hindering
and conspiracy, no state action required,
economic bias 4) Ledbetter Fair Pay Act of
2009 – 29 USC § 206(d)(1)pay rate
discrimination by sex, 5) 42 U.S.C. § 2000e-5
(e)(3)(A) each paycheck is discriminatory,
statute of limitations begins anew 6)
Discrimination CA. Gov't Code § 11135(a); 7)
Intentional Infliction of Emotional Distress;
Hostile Work Environment; 8) Retaliation
CA. Labor Code 1102.5(b) and Harassment
CA. FEHA § 12940 (h)(j), 9) California's Equal
Pay Act Labor Code §§ 1197.5 and 432.3 10)
Constitutional Violation of Due Process; 11)
Defamation (libel or slander) Cal. Civ. Code
§ 44; *see also id.* §§ 45–46.**

1. **FEDERAL QUESTIONS**

  **Federal Questions:**
  1) Whether or not the EEOC, a federal agency charged with enforcing civil rights laws
    against workplace discrimination, including "invidious" acts, could arbitrarily ignore or
    eschew the same civil rights laws at the very core of its duties?

1
**WINNS V. EXELA INC.**
**TITLE VII – DEFAMATION – HARASSMENT – RETALIATION – HOSTILE WORK ENVIRONMENT**

2)  Whether or not the EEOC could arbitrarily fail to interview Plaintiff's witnesses for further testimonial evidence favorable to the Plaintiff?

3)  Whether or not the EEOC could refuse to investigate retaliatory incidents, including one event (*retaliatory investigation that was pretextual and defective*) that was also averred through text, by the State of California Labor Commission's audio recording as well?

4)  Whether or not the EEOC could arbitrarily allow Defendant Exela Inc. to submit insufficient reasoning for their clearly retaliatory conduct as a defense, in order to defeat a robust *prima face* case?

5)  Whether or not the EEOC's ignoring or denying of Plaintiff Winns' *prima facie* case to move forward at the Administrative level, was by and in of itself discriminatory?

6)  Whether the EEOC failed to utilize its subpoena authority by submitting an application to the District court U.S.C. §161 (2), and 29 C.F.R. §1601.16 for the production of documentation or records from Defendant Exela Inc., that in all likelihood, would've reflected unfavorably on the party refusing to provide the requested information was also bias and "insidiously" discriminatory to Plaintiff Winns' detriment?

7)  Whether the EEOC intentionally turned a blind eye to ("[Racial or ethnic] imbalance is often a telltale sign of purposeful discrimination." *See Diaz v. Am. Tel., (9th Cir. 1985).* Defendant Exela has failed to either hire or promote at least one, so-called African American to a management, supervisory or even a Lead position.

8)  Whether the EEOC could arbitrarily shun the shifting burden of the *McDonnell Douglas Corp's* framework and subsequently terminate the Plaintiff's submitted charges that undoubtedly comported with the tenants of a prima facie case, including heightened pleadings of plausibility and context specific requirements?

(The Plaintiff's Dismissal and Notice of Rights letter was signed by an EEOC personnel on July 21st, 2020. However, the Notice of Rights letter was received by the Plaintiff on July 23rd, 2020.)

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. § 1331, as this case involves questions of federal law. This Court also has jurisdiction pursuant to 28 U.S.C. § 1343 because Plaintiff seeks damages for violation of his civil rights. Even though all of the events giving rise to Plaintiff Winns' claims occurred at the business of Exela Inc., which is physically located in the City of Milpitas, CA., but geographically situated within Santa Clara County, CA.

3.      However, the Oakland Division venue is proper here because in "the interest of justice," it comports with 28 USC §1404(a) and Local Rule 3-2(h) and the Oakland Division is situated

within California's Northern District as well. Additionally, Defendant Exela Inc's Global

Headquarters is located at 2701 E. Grauwyler Road Irving, TX. 75061.

4.    In a previous case against another party, San Jose Division Judge Harold R Lloyd clearly

erred, dabbled in his own philosophy as opposed to adhering to the statutes and transferred Mr.

Winns' case under 28 USC § 1631 to the Federal Circuit Court of Appeals, when he clearly had

no authority to do so, in blatant violation of anti-discrimination elements. 5 USC §7702(a)(1).

Here, the Plaintiff respectfully digress. (*See attached motion for further explanation regarding an*

*intra-district transfer*)

**NATURE OF THE ACTION AND**
**SYNOPSIS OF THE ISSUES PRESENTED**

5.    I, Harris Lee Winns, (hereafter, ·  Plaintiff·  ), Customer Service Associate/Driver at Exela

Inc., a member of a protected group (Indigenous/Santee Indian) ancestry, or so-called African

American, which is in fact, a misnomer), bring this action before the United States District Court,

Northern District of California, in the City of Oakland, CA. The Plaintiff brings this multi-

pronged action due to violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§§§§

2000e-2 *et seq* 2000e-3(a).2000e-2(m); violation of the Ledbetter Fair Pay Act of 2009 29 USC §

206(d)(1) ; Intentional Infliction of Emotional Distress; Violation of California's discriminatory

laws, California's. FEHA 12940 (h)(j); 42 USC § 1985(3) conspiracy, no government or state

action required; 42 USC § 1981"but for" causation, his Indigenous race/ancestry; "invidious"

discrimination and retaliatory harassment in clear and willful violation of California's Fair

Employment and Housing Authority (FEHA) statutes and intentional violation of the State of

California's Equal Pay Act § 1197.5, *inter alia*.

**PETITIONER WINNS'**
**PRIMA FACIE CASE**

6.  In order for a Complainant or in the alternative, a Plaintiff to successfully present a Prima

Facie case, a trier of facts must be presented to the investigatory authority at the initial stage of

the case. The Plaintiff must establish a *prima facie* case under either discrimination based upon

race; sex or a retaliation theory. *See Earl*, 658 F.3d at 1112; *Stegall v. Citadel Broad Co.*, 350 F.3d

3
**WINNS V. EXELA INC.**
**TITLE VII – DEFAMATION – HARASSMENT – RETALIATION – HOSTILE WORK ENVIRONMENT**

1061, 1065–66 (9th Cir. 2003). If the Complainant establishes a *prima facie* case, there is a "presumption of discrimination." *Reid v. Google, Inc.*, 50 Cal. 4th 512, 520 n.2 (2010); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005); *see also Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir. 1996).

7.   Here, Petitioner Winns is in fact **(1)** Indigenous American race/ancestry (Santee Indian), commonly referred to as African-American, is of a protected class in accordance with Title VII; (i) the Petitioner was treated differently and subsequently complained to Exela Inc.'s so-called Ethics Dept. with regards to racial mistreatment and harassment on numerous occasions that were "invidious" and mean spirited as well; **(2)** Exela Inc., the employer, subjected Mr. Winns to adverse employment decisions, (i) Exela Inc. committed malice against Mr. Winns when he was placed under a defamatory and retaliatory investigation without notification in violation of Defendant Exela stipulated policy and thereby, deprived him of his Due Process Clause from a Constitutional angle; administratively at the EEOC and at the company level as well; (ii) unexplained ADP/Timesheet discrepancies. Both of these employment or personnel decisions are procedurally in error or a clear deviation from the norm and/or stated policies; **(3)** Exela Inc. has failed to implement a standard compensation framework, and thus, it also appears that Exela Inc. has resorted to an arbitrary <u>compensation</u> scheme instead, for more easy manipulation of pay rates, depending upon race, sex and favoritism; and as such, Defendant Exela Inc. has materially affected the terms  or conditions of the Petitioner's employment; **(4)** The second <u>compensation</u> issue here, is that Defendant Exela Inc. failed to give Plaintiff Winns a measly one-dollar($1) raise after ninety (90) days of continuous employment as promised within the text of job announcement. (Exhibit D) Interestingly enough, other employees similarly situated, but extraneous to the Petitioner's protected class did receive an increase in pay after ninety days of employment, and thus, were treated differently and more favorably. **(5)** An intentional or negligent infliction of emotional distress claim against Exela Inc. due to a phantom "investigation", either to induce duress and in addition to "intimidate" Mr. Winns. 42 USC 1985(2). **(6)** Defamation of Mr. Winns' character by placing him under a retaliatory

investigation, due to filing a complaint with California's Labor Commission and "because he [Mr. Winns] had opposed an unlawful employment practice or made a [Title VII/race/ancestry] charge."42 USC § 2000e-3(a) and judging by Exela's retaliatory response, thereby gave even more credence that Mr. Winns' Indigenous race, ancestry; or alternatively, so-called African American was in fact a "motivating factor". 42 USC 2000e-2(m), regarding the actions and inactions that agents Cherine Morris, HR Business Partner, Betty Smith, HR Business Partner and Brian Johnson, Service Delivery Manager took on behalf of Defendant Exela Inc., **(7)** The leading factor here was "but for" causation of injury due to his Indigenous race/ancestry 42 USC Section § 1981, the Plaintiff "shall have the same right in every State and Territory . . . to make and enforce contracts . . . as is enjoyed by white citizens"; which are even "protected against nongovernmental discrimination,"; **(8)** Once again, as it relates to compensation, Defendant Exela Inc. took another adverse employment action against Petitioner Winns by failing to give an additional $1.00 increase to his hourly rate of pay as announced and promised through the job description for the vacancy in question, for completing the first ninety [90] days of employment. Others similarly situated, did in fact receive an increase in their hourly rate of pay. **(9)** there is a casual link between the protected activity (numerous complaints to Exela Inc./Novitex's Ethics Dept.) under Title VII regarding racial disparate treatment and outright horrible, retaliatory conduct of Exela Inc. through agents in leadership positions as well. Namely, .. Brian Johnson, Cherine Morris and Betty Smith. Moreover, others similarly situated outside of Plaintiff Winns' protected class were treated more favorably. *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000). *(Note: The retaliatory timesheet discrepancies have been resolved via compensation;. Nonetheless, it was still an adverse employment decision that Exela Inc. committed upon their own volition, to the detriment of Mr. Winns)*.

8.   Here, Manager Brian Johnson, an agent of Exela Inc., has materially altered the terms and conditions of employment through his retaliatory conduct. Additionally, HR Business Partner Cherine Morris has acquiesced in her capacity at certain times, to cease the unabated harassment and retaliation to target Plaintiff Winns. Moreover, HR Business Partner Betty

Smith, failed to complete her supposed investigation regarding Petitioner Winns' equal pay claims.

## THE SHIFTING BURDEN OF
## MCDONNEL DOUGLAS CORP.

9.   Under the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–803 (1973), Winns had the burden of first establishing a prima facie case of discrimination. Exela, Inc., then had the burden of producing evidence of a legitimate non-discriminatory reason for their adverse action(s), and if Exela Inc., were successful, the burden shifted back to Winns to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."*Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143 (2000) (internal quotation marks omitted); *see also Diaz v. Eagle Produce Ltd. P'ship,* 521 F.3d 1201, 1207 (9th Cir. 2008); *Guz v. Bechtel Nat'l, Inc.,* 8 P.3d 1089, 1113 (2000).

10.   Interestingly enough, the EEOC accepted Exela Inc's submitted "position statement," which was hollow and did not provide a light that would've illuminated their reasoning or in the alternative, the Defendant clearly failed the shifting burden test of McDonnell Douglass and therefore, was unsuccessful in terms of articulating a legitimate, nondiscriminatory reason for the adverse actions taken against Plaintiff Winns.

## THE EEOC FAILED MISERABLY TO DEVELOP
## IMPARTIAL AND FACTUAL RECORDS

11.   Chapter 6 of the EEOC's Management Directive 110, "prescribes the Equal Employment Opportunity Commission's standards for impartiality and appropriateness in factual findings on formal complaints of discrimination. Additionally, and more to the point, pursuant to 29 CFR § 1614.108(b) <u>"the agency (EEOC), shall develop an impartial and appropriate factual record</u> upon which to make findings on the claims raised by the written complaint. An appropriate factual record is one that allows a reasonable fact finder to draw conclusions as to whether discrimination occurred."

12.    Moreover, even while the EEOC failed to follow their own Management Directive and in addition to ignoring their online, published guidelines relative to conducting investigations. The enforcement guideline states in one pertinent part under the headline of: Framework for Investigations and Conciliations: "In investigations, EEOC's role is to gather facts to objectively determine whether there is reasonable cause to believe that discrimination occurred."

13.    But here, the EEOC willingly chose to do just the opposite of what's stated here relative to Plaintiff Winns. It appears that the EEOC selectively or arbitrarily chooses when to vigorously pursue the truth as a fact-finder while conducting an investigation. Here, this is the belief of Plaintiff due to the obvious ignoring of submitted evidence of discriminatory conduct perpetrated by Exela Inc.

14.    The primary pieces of evidence of Defendant Exela discriminating against the Petitioner is of a voice recording by a California's Labor Commission personnel stating that Mr. Winns was under investigation at work; the failure of the EEOC to compel Defendant Exela Inc. to produce a (Labor Code 432.3(c)) as a matter of State law and the refusal of the EEOC to interview two co-workers that were at all times, who willing and readily available to provide testimonial evidence that discrimination in the form of harassment did in fact occur, amongst other low levels or frequent incidents of embarrassing pettiness and slights, openly committed by the Defendants that the Plaintiff refuses to dignify here. The only effect experienced by Mr. Winns in regards to the Defendant's collective of minutiae conduct, was that it somewhat or intermittently disturbed the Plaintiff's olfactory nerve.

## EEOC's INITIAL THREAT
## OF DISMISSAL (4.7.2020)

15.    On April 7th, 2020, the EEOC's Investigator Lisa Fung stated the following as it pertained to Mr. Winns' case, in most pertinent part:

"However, based on the evidence obtained and carefully reviewed in your

case, there is no indication that further investigation of your charge would lead to

a different outcome. My recommended disposition of this matter will now be

1    forwarded for internal management review. If EEOC management concurs with my

2    recommendation after final review, our office will be terminating its investigation into your

3    allegations and your charge will be dismissed." Lisa Fung, EEOC Investigator

### THE EEOC's DISMISSAL OF PETITIONER'S CASE
### WITHOUT EVEN INTERVIEWING
### READILY AVAILABLE WITNESSES

16.    Interestingly enough, on June 23rd, of 2020, Mr. Winns received the EEOC's second

decision regarding his case. The letter stated the following in most relevant part:

"Based upon an analysis of your charge, the EEOC' is terminating its investigation into your

allegations and is dismissing your charge. Therefore, under our Priority Charge Handling

Procedures, we focus our limited resources on those charges in which we believe a

violation of the laws enforced by the EEOC can be established. However, there is no indication

that further investigation of your charge would lead to a different outcome."-

Lisa Fung, EEOC Decision Letter dated 7.21.2020

### SURPASSING PLAUSIBILITY AND
### MEETING CONTEXT SPECIFIC REQUIREMENTS
### THROUGH EVIDENTIARY ATTACHMENTS

17.    "Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S.

544, 570 (2007)). "*First*, a claim has "facial plausibility" when the plaintiff pleads "factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Id. This "plausibility" standard is "not akin to a 'probability requirement,'

but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.*Second*,

determining whether a complaint states a plausible claim is context-specific, requiring the

reviewing court to draw on its experience and common sense. *Id.*, at 556, 127 S.Ct. 1955.

### ADVERSE EMPLOYMENT DECISION

18.    The U.S. Supreme Court had this to say regarding adverse employment decisions:

In Burlington Northern & Santa Fe Railway Co. v. White (2006), "We refer to reactions of a

reasonable employee because we believe that the provision's standard for judging harm must

be objective. An objective standard is judicially administrable. It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings."

19.    "We have emphasized the need for objective standards in other Title VII contexts, and those same concerns animate our decision here. See, e.g., Suders, 542 U. S., at 141 (constructive discharge doctrine); Harris v. Forklift Systems, Inc., 510 U. S. 17, 21 (1993) (hostile work environment doctrine). We phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances."

20.  In other words, each case carries its own adverse employment uniqueness; distinctiveness or particulars, and therefore, aren't hemmed in or constrained by the rigidity of preset protocols.

### SYNOPSIS OF EVIDENTIARY ATTACHMENTS

**21. EXHIBIT A**
**Brian Johnson Refused to Produce Exela's**
**Pay Scale as Required State by Law – Labor Code 432.3 (c)**
On Nov. 27th, 2018, I requested of Brian Johnson the company's pay scale. As expected, Brian simply refused to grant my simple request and never responded whatsoever. However, pursuant to California Labor Code 432.3 (c) mandates the following:

"An employer, upon reasonable request, shall provide the pay scale for a position to an applicant applying for employment. For purposes of this section, "pay scale" means a salary or hourly wage range. For purposes of this section "reasonable request" means a request made after an applicant has completed an initial interview with the employer."

Here, the word "shall" denotes in essence that an employer must perform a certain function or duty owed to the employee and the availability of an option to do otherwise does not exist. The action taken here by Brian and by extension, Exela Inc., is incongruent with the company's own written policy.

**22. EXHIBIT B**
**Brian Johnson Failed to give a Coherent**
**Explanation Regarding ADP/Timesheet Discrepancies**
Brian Johnson, Service Delivery Manager, Cherine Morris, HR Business Partner and Betty Smith, HR Business Partner were confronted by the Petitioner via email on Nov. 7th, 2019, in regards to his recently uncovered ADP/Timesheet discrepancies.

On Nov. 8th, 2019, Brian's told me in his office, when referring to my timesheet and that it

displayed that I was slotted for merely 35:00 per week as opposed to 40:00 hours per week, he replied, "that doesn't mean anything." Brian's non-expert explanation was wholly insufficient. The Petitioner's weekly hours are calculated at 35:00 hours. However, other co-worker's who were gracious enough to allow me to view timesheet, displayed that their weekly hours are being calculated at 37:5 hours per week. But yet, Brian nonchalantly states that this "doesn't mean anything" as opposed to having me assured by someone that's certified or qualified in the usage of ADP's application will provide him with the answers to my question.  Moreover, Brian also expressed that some of the discrepancies were "due to ADP's server migration to another server." However, conducting a little research revealed that what Brian stated was in fact, impossible.

The server migration took place on July 22nd, 2019 as highlighted by Brian's email below (exhibit E). The email's subject line read: "RE: 7/22/2019 REMINDER – PAYROLL RELATED – URGENT – PLEASEREAD IMMEDIATELY (Attachments: Novitex/PayrollSystemMigration)

Additionally, the Petitioner's "clock in" and "clock out" hours were mysteriously changed from"4:30pm" to "3:30pm" on Monday June 6th, 2019. This is approximately 1 ½ months prior to the date that Brian Johnson claimed that the ADP server migration took place. Brian has failed miserably to follow the established guidelines as already written, and thus by extension, to conceal his true intentions.

And since the Petitioner still haven't received an admirable response from neither one of the managers mentioned above concerning ADP discrepancies, well then, it is undoubtedly a reasonable position for Mr. Winns to presume that Brian's actions were perhaps done so with a nefarious objective and calculated to the Petitioner's monetary detriment, just as it may be with others similarly situated as well.

In stark contrast, Exela's Employee Handbook states the following regarding "Timekeeping" on page #34:"The company complies with all applicable laws that require the company to maintain records of the hours worked by employees. Accurately recording time worked is the responsibility of all non-exempt employees."(Exhibit F)

23. **EXHIBIT C**
**Mr. Winns Suffered Emotional Distress due to**
**Exela Conducting a Secret Investigation Targeting Him**
On Sept. 5th, 20129, Petitioner Winns was informed by a personnel from California's Labor Commissioner's Office that he was under some type of investigation by his employer, Exela. The Complainant suffered through many nights without sleep after finding out that he was under investigation for reasons unbeknownst to him.

Again, in stark contrast, Exela's Employee Handbook states the following regarding "Investigation Procedures" on page #9: "Upon receiving a complain, the Company will promptly conduct a fair and thorough investigation into the facts and circumstances of any claim of a violation of this policy or our Equal Employment Opportunity Policy to ensure due process for all parties." (Exhibit G)

Additionally, on or about or during the months of September and October, Cisco's security service provider, G4S, had Mr. Winns under continuous surveillance on almost a daily basis at Building Q. Sometimes there were more than two security personnel at this building. In the past there were always only one security personnel.

On two separate occasions during the timeframe mentioned above, after making some deliveries, and as I was exiting Building Q's parking lot, a white/Caucasian male followed me out of the parking lot. A right was made on N. First St. The Petitioner then made a u-turn at Rio Robles. Now headed Southbound on N. First Street, Cisco's supposed security provider, G4S, was still following him. Mr. Winns then made a right-turn on Tasman, now headed east. Only then did Cisco's security services continued driving South on N. First Street.

Moreover, prior to the security incident above, a security officer who appeared to be middle age, white/Caucasian female, albeit unknown, was seen walking around Cisco's Sycamore Drive building. Mr. Winns believes that she was a manager because the Petitioner never saw her patrolling Cisco's campus as it is with lower level security personnel. He is unsure if the security personnel in question spoke to Brian Johnson but, it is most certainly possible.

In light of the grossly inadequate investigation conducted by Exela Inc. targeting Mr. Winns, the Petitioner has been deprived of the Procedural Due Clause expressed in the US Constitution; the EEOC's investigative procedures and within Defendant Exela Inc's written policies as well, as it pertains to investigations.

24. **EXHIBIT D**
**Customer Service Associate**
**Job Description**
The attached job description clearly states the following: "Compensation will start around $15.00 per hour and candidates who successfully complete their first 90 days of employment will also be given an additional $1.00 increase to their hourly rate."

Again, Exela Inc. and the EEOC have deviated from normal procedures when it comes to dealing fairly with Indigenous people, more commonly or colloquially referred to as African American. Brian, and by extension Exela has refused to honor what's stipulated within their own job description due to my race, Indigenous American (Santee Indian), commonly referred to as either Black, which is simply a color or even African American.

1
2 **25. <u>EXHIBIT E</u>**
3 **An email from Brian Johnson explaining**
**the ADP server migration to another server/ Potential Cover-up of wrongdoing**
4 The email's subject line stated the following: RE: 7/22/2019 REMINDER – PAYROLL RELATED
– URGENT – PLEASEREAD IMMEDIATELY (Attachments: Novitex/PayrollSystemMigration)
5 Here, Brian was clearly being dishonest regarding his explanation to me regarding his attempt
to explain Mr. Winns' ADP discrepancies. It appears that Brian was attempting to conceal some
6 type of action or manipulation of this application that he took upon his own volition, by telling
7 me something that simply isn't truthful. Once again, Manager Brian Johnson's conduct has
reaffirmed Exela Inc's intentional discriminatory patterns.
8

9 At a minimum, my weekly accrued hours resting at 35:00 hours per week as opposed to 37:5 as
it with other employees, means at this rate, at least my vacation hours are in fact accruing at a
10 slower pace. Therefore, Exela Inc. must precisely account for these deduction of vacation hours
11 that should've been accrued over the past two and a half years had it not been for the
intentional manipulation of the ADP software by Brian Johnson without meaningful
12 explanation.
13
**26. <u>EXHIBIT F</u>**
14 **Timekeeping Policy**
15 "Time worked is the time spent on the job performing assigned duties. Altering, falsifying of an
employee's time record may result in corrective action up to and including termination."
16
17 **27. <u>EXHIBIT G</u>**
**Investigation Procedures**
18 "Upon receiving a complain, the Company will promptly conduct a fair and thorough
investigation into the facts and circumstances of any claim of a violation of this policy or our
19 Equal Employment Opportunity Policy <u>to ensure due process for all parties</u>."
20
**28. <u>EXHIBIT H</u>**
21 **Labor Commissioner's Case Closure**
22 **Encouraged Petitioner to File Suit Regarding Retaliation**
"While your case has been closed [self withdrawal] with this office, you are advised that you
23 may be able to bring an action against the employer in civil court to pursue your retaliation
claim. You may wish to consult an attorney to determine your rights and the deadlines for filing
24 a civil action." – Alejandro Cortez, Industrial Relations Rep., Calif. Labor Commission 9.9.2019
25
26
27 **CISCO'S SUPPOSED HOLIDAY**
**SHUTDOWN of 2017**
28 12
WINNS V. EXELA INC.
TITLE VII – DEFAMATION – HARASSMENT – RETALIATION – HOSTILE WORK ENVIRONMENT

29.   Furthermore, the EEOC apparently also accepted Exela's naked assertion or claim that they were only be in need of a "skeleton crew" for the shutdown in question, simply isn't true. I was told personally, … again, by Brian Johnson that there was an impending shutdown. As I've shown above, Brian's statements and by extension, Exela's testimonial position should be taken as if it was simply a grain salt.

The Petitioner was about to experience my first shutdown at Exela in 2017 and weren't sure how exactly Exela Inc. went about the business of a shutdown. I was merely told that here would be a "shutdown in the mailroom" by Brian sometime early in December 2017.

Mr. Winns was totally unaware that Brian was utilizing Jose Martinez Leon Guerrero, as a backup. Additionally, Jose had only been with the company a few months at the time and unbeknownst to the Petitioner, was performing Winns' tasks for the second half of his shift.

Mr. Winns was never given or offered the opportunity to work the entire shift. And as Exela Inc averred via the EEOC the following statement: "Records shows that you worked and used vacation time during the holidays." Also, the Petitioner never stated that he didn't work. Mr. Winns merely stated that Brian reduced his work hours in favor of Jose without offering Mr. Winns the opportunity to work his entire shift. Clearly, and again, this was purposeful and retaliatory discrimination on the part of Brian.

Therefore, Brian, retaliated against the Petitioner by reducing his work hours because Mr. Winns filed a complaint against him with Exela Inc's supposed internal Ethics Dept. either a month or two earlier. Again and again, it seems as though the EEOC failed to conduct even as much as a cursory review to reveal what actually took place and to expose why Manager Brian Johnson did what he did.

30.   In response to Cisco's 2017 s December "shutdown", according to Manager Brian Johnson, Exela's representative contends the following in support: "Indeed, Mr. Winns' time records clearly reflect that he worked hours on December 26, 27 and 28.Based upon the foregoing, Mr. Winns' allegation that Mr. Johnson retaliated against Mr. Winns is nonsensical and plainly false."

31.   Clearly, Exela's representative appears to have miscomprehended what the Petitioner wrote, perhaps intentionally, concerning the December 2017 "shutdown" as told to Mr. Winns by Manager Brian Johnson himself. And as the Plaintiff has already explained above, Brian seems to experience periodic difficulty when it comes to speaking the truth. However, and once

again, Brian Johnson told the Petitioner that Cisco would be "shutdown" on the days mentioned above. Brian never offered Petitioner Winns the opportunity to work the full shift as he should have. This easily explains why Mr. Winns submitted vacation hours in lieu of working the entire shift. Shortly thereafter, Plaintiff Winns was told by another employee that Jose Guererro was completing the mail-run duties in the latter portion of the shift. And again, Brian retaliated against the Plaintiff due to him filing a complaint against him with Exela's so-called Ethics Department approximately a month or two earlier. And thus, in December of 2017, Brian Johnson retaliated by reducing Mr. Winns' work hours.

32.     And therefore, Mr. Winns greatly resent the "nonsensical and plainly false" assertion made by Exela's representative. To me, these comments alone are evident signs of either frustration or desperation perhaps both are applicable here, to cause confusion.

**EXELA INC. AND THE**
**EEOC's NAKED ASSERTIONS**

30.     Moreover, the EEOC acceptance of Exela's naked testimony should be back up with some type of documented qualification (email; memo).This naked embracement of Exela's empty assertions by the EEOC is simply unacceptable. Interestingly enough, the EEOC further asserts the following: "In order to prove you were not earning the same wage increases due to your sex male, and the EPA, you would need to provide evidence showing you that you earned less wage increases than female comparators, who were in the same job title." Well, Petitioner Winns can only prove this without a shadow of doubt if Brian Johnson and/or Exela Enterprise would release the company's "pay scale" as mandated by EPA. (Labor Code 432.3(c) Furthermore, and admittedly, the nameless Attorney representing Exela Enterprise stated on page #5 of the Respondent's Position Statement, states the following: "Ms. Clemente $17.66 per hour."

Even if we didn't perform the same work, California's EPA states that "mental and physical exertion must be accounted for. This also includes "hazardous environments" as well. Moreover, Mr. Winns has reason to believe that Ms. Clemente was earning even more than

what's mentioned above. Again, it's imperative that the EEOC interview the Petitioner's witnesses for further testimonial evidence.

## CALIFORNIA EQUAL PAY ACT –
### LABOR CODES §§ 1197.5 - 432.3 / 29 USC §206(d)

31.   In most relevant part, California EPA states the following:

Calif. Labor Code § 1197.5 (a) An employer shall not pay any of its employees at wage rates less than the rates paid to employees of the opposite sex for substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions, except where the employer demonstrates: (1) The wage differential is based upon one or more of the following factors: (A) A seniority system. (B) A merit system. (C) A system that measures earnings by quantity or quality of production.

32.   Even more awkward, within Exela's "position statement"; their representative, did in fact correctly allude to the text of California's Equal Pay framework, that in order to defeat an equal pay complaint. But yet, within the same vein, Exela's unsound position concerning equal pay clearly failed to demonstrate whether they have implemented such a framework to justify the pay disparity between the Petitioner and his female comparator. Therefore, since the Defendant's representative is unable to show or display, "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a "differential based on any other factor other than sex." 29 U.S.C. §§ 206(d)(1), Calif. Labor Code 1197.5, the Defendants' collective efforts to defeat the Petitioner's prima case, will ultimately fail for not having the necessary administrative structure to support the basis for differences in pay rates between genders.

33.   And as such, Plaintiff Winns should easily prevail in regards to his equal pay claim against Exela which is clearly based upon sex, an impermissible factor here. Therefore, since Exela cannot proffer or give a reasonable explanation in terms of why a sedentary female employee should be paid more than an active male employee; then clearly, Defendant Exela Inc's endeavor has fell quite short and therefore, it must fail; due to being unable to rebut Plaintiff Winns' *prima facie* case regarding equal pay.

32.    Even further, Exela Inc. has not implemented a compensation regulator or in the alternative, some type of framework to avoid a state of capriciousness relative to equal pay amongst its employees in differentiating categories. The failure of Exela Inc. to utilize a scheme that would have assisted them in gauging productivity, skill or effort, is exactly why the Defendant is in the position in which they currently find themselves at this very moment. It appears to be nothing less than a self defeating position, while rocking on their collective heels, attempting to explain their compromised disposition.

33.    Even though Ms. Clemente and Petitioner Winns may or may not be performing "substantially similar work", we both held the titles of Customer Service Associates. Ms. Clemente, who is no longer with Exela Inc., held the sub-title as one of the Helpdesk personnel, which of course, is an extremely inactive or stationary position in the vast majority of workplace environments.

**DEFENDANT EXELA INC. CANNOT DEFEAT
PLAINTIFF'S EQUAL PAY CLAIM
WITH NAKED ASSERTIONS**

34.    Mr. Winns, who is a Customer Service Associate, also holds a sub-title as a Driver. What Exela Inc. has done here is an attempt to justify Ms. Clemente earning more than the Petitioner by crisscrossing the primary elements of the EPA and intentionally, albeit erroneously, attributed them to Ms. Clemente as being a more productive employee. Once again, Exela Inc. still cannot defeat Mr. Winns' Equal Pay claims, which were undoubtedly based upon "race-, or an ethnicity factor; and not consistent with a business necessity." Moreover, the abundance of racial animus demonstrated by Cherine Morris, HR Business Partner, Brian Johnson, Service Delivery Manager and by extension, Exela Inc., targeting Plaintiff Winns throughout the four corners of the pleadings here are overwhelmingly shameful and does not bode well for Defendant's business image and/or professional reputation as a whole.

35.    However, this failed endeavor by Exela Inc., through their representative, Attorney Nameless (failed to divulge his/her name at first), falls considerably short in their twisted

proposition, for a lack of coherency in order to exculpate themselves from what appears to be a defeated position.

36.    Delivering packages in most instances requires "mental and physical exertion" and taking evasive action when necessary. Additionally, as a Driver, Mr. Winns experiences a fluctuation of "temperatures, fumes, exhaust and other unforeseen "hazards", like the increased potential for getting involved in a vehicular incident on the roadways or even the potential of spillage of a variety of toxic material as well. Most certainly, Ms. Clemente does not experience these hazards while desk-bound in a comfortable, but sedentary position.

37.    Here, I present a reasonable assessment of Ms. Clemente's chances of experiencing the attributes of California's EPA while sitting and performing her tasks and duties of a Helpdesk personnel:

- ✓ Physical exertion = minimal to none
- ✓ Mental exertion = minimal to none
- ✓ Responsibility/Accountability = minimal
- ✓ Working conditions = comfortable
- ✓ Temperature = heater/ AC, very comfortable
- ✓ Fumes/exhaust = none
- ✓ Hazards/dangers = none

38.    In short, the representative Attorney for Exela Inc., has failed miserably to explain why Ms. Clemente should be earning more than Petitioner Winns. Without a doubt, the Plaintiff experiences all of the Equal Pay Act's attributes on a daily basis at the state and federal levels, and therefore, should be earning even more than what Ms. Clemente is purported to have been earning prior to leaving the company.

39.    Again, the Petitioner has reason to believe that Clemente was earning more what's mentioned here by their representative.  This is why it was imperative that the EEOC utilize its subpoena authority to force Exela Inc. to produce their "pay scale"(Labor Code 432.3(c) under the California's EPA, Labor Code section §§ 1197.5 / 432.3 as I have requested over a year ago. However, they failed to do so, perhaps intentionally. Equal Pay Act 29 USC § 206(d). "An employer who fails to provide a pay scale in response to a reasonable request for a pay scale is

in violation of California Labor Code section 432.3."

https://www.dir.ca.gov/dlse/california_equal_pay_act.htm

40.    Under the Equal Pay Act, the plaintiff has the burden of establishing a prima facie case of discrimination. Stanley v. Univ. of S. Cal., 178 F.3d 1069, 1073–74 (9th Cir. 1999). "The Equal Pay Act creates a type of strict liability; no intent to discriminate need be shown." Maxwell v. City of Tucson, 803 F.2d 444, 446 (9th Cir. 1986) (internal quotation marks and citation omitted). Thus, to make out a prima facie case, the plaintiff must show only that he or she is receiving different wages for equal work. Hein v. Or. Coll. of Educ., 718 F.2d 910, 916 (9th Cir. 1983).

41.    Interestingly enough, Plaintiff Winns on a daily basis and through "effort," is performing more physically intensive work than Ms. Clemente, but yet, is paid at a lower hourly rate than his female comparator who performed the majority of her duties at a desk in a controlled work environment.

42.    Even Defendant Exela's representative admitted that the Plaintiff's job duties and "efforts" require much more "physical exertion" than comparator Ms. Clemente when he stated within his EEOC Position Statement: "the job functions are not substantially equal than the more manual labor focused functions performed by Mr. Winns." Clearly, the representative's kernel of truth statement is a distinction without a difference, by him inadvertently projecting or straying into the bounds of the Petitioner's argument and thus, lending support to the Plaintiff's discourse, however unintended. Nonetheless, the Plaintiff partly agrees here because his duties in fact, require even more physical and mental exertion. And unquestionably, more "accountability and responsibility" with regards to the high cost value of Cisco's electronic equipment and the operation of a vehicle, which at any given moment, the Plaintiff could potentially be involved in a vehicular incident. Yahawa God forbid!

43.    Admittedly, Exela Inc's representative has also voluntarily stated within their "position statement" above, that Ms. Clemente was earning $17.66 per hour. In fact, Exela has provided nothing that would indicate or prove the hourly rate disparity had nothing to do with, or that it was not based upon gender. The Petitioner truly believes that Ms. Clemente was earning even

more than what the Defendant has revealed here. However, that remains to be seen due to Exela's refusal to provide Mr. Winns with the requested Pay Scale as a matter of California law. Labor Code section § 432.3(c)

https://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?sectionNum=432.3.&highlight=true&lawCode=LAB&keyword=pay+scale

## MANAGER BRIAN JOHNSON'S
## MOMENT OF HOSTILITY (Incident #4)

44.     On January 14th, 2019, again, a co-worker asked if I had received an email from Brian Johnson titled "Annual Performance Review Self-Assessment." I told her I may have but wasn't certain at the moment.

After further review, it was revealed that Brian sent the email regarding "Self Assessment" on January 8th, 2019, an entire week earlier. Again, Brian never inquired with me, either to remind me of the email or even to inform me that the deadline was approaching in terms of the date to reply to this particular email just as he did with the other electronic correspondences.

45.     Shortly thereafter, I sent Brian an email, requesting of him to remove me from the shipping department's list. The removal from their email list will greatly assist me in responding within the specified timeframe.

46.     On the morning of January 15th, 2019, I spoke to someone from the IT unit and was given instructions on how to unsubscribe from the shipping department's email. Shortly prior to lunch, and while in the process of unsubscribing from the shipping department, Brian approached my desk. He wanted to show me how to unsubscribe from the shipping department's aliases. I told him that I would take care of it because I was given instruction relative to unsubscribing. However, Brian then insisted. I again told him that I would take care of it.

47.     Inexplicably strange, Brian then said to me in a confrontational tone of voice: "Well, you don't have to have an attitude about it." I then told Brian that it was merely his perception regarding my simple reply denying his offer to assist me and that I did not respond to him or have an attitude.

48.    Later that afternoon, Brian sent me the following email <u>attempting to re-label or in the</u> <u>alternative, re-categorize the narrative by referring to our near argument</u> that was initiated by him as simply a "conversation." In fact, it would be farfetched or a stretch of one's imagination to claim that it was a mere "conversation" as Brian recalled.

@4:11pm Brian replied: "Hello Harris, In my conversation with you this afternoon, you will need to do this task in the Cisco CEC mailer Page. As I'm not the owner of the alias your speaking of, I will show you on Wednesday on how to achieve this task. In the meantime, you can always filter your email based on the sender (Me).
Thanks, Brian

49.    Here, Brian attempted to "<u>intimidate a witness or parties to a legal action</u> (Section 2 of the Ku Klux Klan Act, now codified at 42 USC § 1985) or perhaps even provoke Petitioner Winns into something beyond a near argument. Mr. Winns was made to feel very uncomfortable as there was no one else in the immediate vicinity of the mailroom. The Petitioner's even temperament is what kept this incident from escalating into something more serious, perhaps even physical.

50.    Clearly, Brian's retaliatory and unprofessional conduct; his lack of interpersonal skills; his lack of tact and his level of managerial skill, or lack thereof, has revealed his personality, which is undoubtedly tilted towards being unfit to hold any managerial or supervisory position. In short, his attempt to intimidate Mr. Winns has failed miserably and in the process, it is Brian who created a racially hostile work environment.

51.    Obviously, Exela Inc's upper management hasn't done enough, if anything at all, in order to restrain the unfettered conduct of Brian Johnson. And since Exela is either incapable or unwilling to stop the harassment of Petitioner Winns by Brian Johnson, the legal consequences that Exela will eventually bear, has also increased as well.

52.    Moreover, if Brian is incapable of conducting himself as an adult in the workplace, he should at least stay away from my work area and in the alternative, contact me via email in order to avoid manufactured controversies.

53.     In consideration of the accumulative events listed above, it appears that provocateur agent Brian Johnson and as an extension, Exela Inc., has not only violated their own retaliation and or harassment policies, but also the text of what's expressed within Title VII of the Civil Rights Act of 1964, 42 USC §§ 2000e-2 *et seq*. Calif. Gov't Code 11135(a) as it relates to disparate treatment regarding race.

## THE WEAPONIZATION OF THE ACT OF
## RETALIATION TO DEFAME THE PLAINTIFF

54.     Under the relevant policy, the insurer was obligated to "cover damages [that Kaufman became] legally obligated to pay for personal injury or property damage which [took] place anytime during the policy period and [were] caused by an occurrence." "'Personal injury' means the following injuries[:] . . . libel, slander, [or] defamation of character . . ." (*Kaufman v. Federal Insurance Company, Ninth Cir. June 2020*)

55.     Here, Defendant Exela Inc. conducted an investigation involving the Petitioner, Mr. Winns. The reasoning that gave rise to the investigation is still for reasons, unbeknownst to him. This injurious attack upon the character of the Plaintiff was a direct retaliation for filing a complaint with California's Labor Commission regarding equal pay in April of 2019.

56.     Fast forward to September 4th, 2019, at approximately 3:00pm, Mr. Winns telephoned the Commissioner's office for an updated status regarding his submitted and left a voice message to that effect.

57.     On the following morning of September 5th, 2019 at approximately 8:45am, Mr. Winns received a returned voice message from the Commissioner's office. The personnel from the Commissioner's office stated within her voice message at 00:18 seconds mark the following:

➢ "Once your claim is assigned to a Deputy, you'll receive a copy of the (Exela's) response, with a copy of the Deputy's contact information."

In regards to the same message, the following is then uttered at the 00:32 seconds mark:

➢ "At this point in the investigation, you are anonymous, for that claim, not for the retaliation claim though."

58.   Under California law, "[t]he tort of defamation 'involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.'" *Taus v. Loftus*, 151 P.3d 1185, 1209 (Cal. 2007) (quoting 5 B.E. Witkin, *Summary of California Law* § 529, at 782 (10th ed. 2005)). Defamation may be effected by either libel or slander. Cal. Civ. Code § 44; *see also id.* §§ 45–46. (*Kaufman v. Federal Insurance Company, Ninth Cir. June 2020*).

59.   Mr. Winns was never informed of being "involved" an investigation as it was uttered by the unknown Labor Commissioner's personnel. Therefore, and once again, Defendant Exela has expressed itself through an act of conspiracy, through its agents, in a manner incongruent with their own said investigation policies; policies of the EEOC relative to investigations and the laws of the United States mentioning "conspiracy" as well. 42 USC 1985(3). So much so, and so frequent, that a reasonable person could easily construe their collective behavior as teetering on the brink of being considered as voluntary lawbreakers.

### THE ELEMENTS OF A PRIMA FACIE
### CASE OF DEFAMATION
#### (Defamation (libel or slander) Cal. Civ. Code § 44; *see also id.* §§ 45–46.)

60.   A prima facie case of defamation involves the following: The tort of defamation "involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." [*Taus v. Loftus* (2007) 40 Cal.4th 683, 720.] (5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 529, p. 782, citing Civ. Code, §§ 45-46 and cases.)

61.   Here, Defendant Exela communicated or (a) "published to a California's Labor Commission personnel in either August or September of 2019, by means [electronic or mechanical] California Civ. Code. § 46, of which is still unknown to the Petitioner, that Plaintiff Winns was under "investigation". (b)The "communication or publication was false then and still is today. Mr. Winns was never notified of an investigation in which he was supposedly involved. (c) The false claim(s) communicated to the Labor Commission by Exela Inc. were "defamatory" and designed to bring emotional harm. Even if it was communicated "to a single

person other than the Plaintiff is sufficient " [Ringler Assocs. Inc. v. Maryland Cas. Co. *(2008) 80 Cal.App.4th 1165, 1179.*] (**d**) Defendant Exela's uttered communication to the Labor Commissioner's office, whether mechanical, electronic or otherwise were in fact, "false and unprivileged". And as a direct result of the action(s) and inaction(s) of Exela, either way, Plaintiff Winns has suffered and thus, "injured him [Winns] in his occupation." Consequently, defamatory deeds, (**e**) "has a natural tendency to injure or that causes special damage." [Plaintiff Winns has suffered reputational, career, mental anguish, physical injury and emotional injuries) (*see attached* Regional Medical Center. of San Jose document). California Civ. Code § 46.

62.     Additionally, and since Mr. Winns is a "private individual" as opposed to being a "public figure," the employee [Mr. Winns] does <u>not</u> carry the burden of proving the defamatory statement false. "Instead, the Defendant employer [Exela Inc.] carries the burden of proving the defamatory statement is true. [Whatever false statement that Exela made to the Labor Commission's Office] " [Ringler Assocs. Inc. v. Maryland Cas. Co. *(2008) 80 Cal.App.4th 1165, 1180.*]

63.     Here, it is sheer contradictory in its purest form, for Exela Inc. to believe that on one hand, it is known that Mr. Winns filed an Equal Pay complaint with the Labor Commission, but yet, on the other hand, he remains "anonymous" in terms of being the subject of an investigation of an unknown type. However, this act alone is "reasonably susceptible of a defamatory meaning" concerning Mr. Winns. *See Phelan v. May Dep't Stores Co.*, 819 N.E.2d 550, 554 (Mass. 2004).

64.     Moreover, just by the mere fact that a failed ruse of an investigation in a retaliatory fashion (Calif. Labor Code 1197.5 (k)(1), was secretly launched against Mr. Winns, this act all by itself, "has a natural tendency to injure or that causes special damage.'" *Taus v. Loftus*, 151 P.3d 1185, 1209 (Cal. 2007) (quoting 5 B.E. Witkin, *Summary of California Law* § 529, at 782 (10th ed. 2005).

65.   In addition, it is unbeknownst to the Plaintiff, whether or not Exela Inc.'s investigation was conducted internally or by an external Investigator. And thus, Mr. Winns was never given the opportunity to respond to Exela's allegations against him and was robbed of his Due Process right as well. *See Poland v. Chertoff*, 494 F.3d 1174, 1182 (9th Cir. 2007)

### THE ELEMENTS OF A PRIMA FACIE CASE
### REGARDING THE EQUAL PAY ACT

66.   As required by the Equal Pay Act, Rizo made a prima facie case of pay discrimination by showing that (1) she performed substantially equal work to that of her male colleagues; (2) the work conditions were basically the same; and (3) the male employees were paid more. *See Riser v. QEP Energy*, 776 F.3d 1191, 1196 (10th Cir. 2015). 29 U.S.C. § 206(d)(1) California's Equal Pay Act, Labor Code § 1197.5, Labor Code § 432.2

67.   Petitioner Winns and former co-worker Ms. Clements were both Customer Service Associates. Winns' subtitle is Driver/delivery personnel. Ms. Clemente's performs her subtitle duties as a Helpdesk personnel. (1) Plaintiff Winns sincerely believes that when his physical nature of work, is juxtapose to the comparator (Ms. Clemente's) sedentary nature of work, clearly the work isn't "substantially equal" or the same in performing or even require equal skill. However, the exertion, physicality, assiduity, effort, toil, attentiveness and the episodic and necessary force required for Mr. Winns to carry out the duties of a driver/delivery personnel aren't the same either. Moreover, Petitioner Winns and Ms. Clemente are both Customer Service Associates.

68.   In short, the Petitioner's female co-worker should not be paid at a higher hourly pay rate because the force summoned, exertion and physical nature of Plaintiff Winns are absent while she performs her duties at an almost stationary position. However, Defendant Exela, in a strange manner has put forth an explanation through their agents; which seems to have proffered through the lens of tortured logic, that Ms. Clemente's desk-bound, Helpdesk duties are in fact justified, and thus, a higher pay rate for less of an effort than Mr. Winns. (2) Clearly, the on duty "work conditions" between Winns and Clemente are <u>not</u> "basically the same." All

of the following elements are a mere glimpse of what <u>Petitioner Winns</u> experiences while performing the duties of his job, but again, these elements are absent while Ms. Clemente performed her duties: (a) physical exertion, (b) mental exertion, (c) responsibilities includes pick-up and deliveries, (d) inclement weather, (e) toxic fumes and/or exhaust and (f) hazardous road conditions, which includes the increased potential of being involved in a vehicular incident, just to mention a few. (3)"Shall not pay an employee of the opposite sex less for similar work." Here, Defendant Exela continued to pay an employee, (Ms. Clemente) of the opposite sex at a higher hourly pay rate for less work than Plaintiff Winns. Through Exela's agents, they continued to do so in bold defiance of the text written in both federal and State statutes covering the Equal Pay Acts.

69.    Moreover, it also appears as if the Defendant's plan was to obstruct and impede continuously, the Petitioner's equal pay endeavor in order for the process to reach its maturation period, and thereby, defeat the Petitioner's purposes so that in all likelihood, he wouldn't be able to collect. ("Willful violation may be commenced no later than three years after the cause of action occurs.") California Labor Code § 1197.5 (4)(i). However, at the federal level, the "Lilly Ledbetter Fair Pay Act of 2009" was passed by Congress under the President Obama administration. This Act "restores the pre-*Ledbetter* position of the EEOC that <u>each paycheck that delivers discriminatory compensation is a wrong actionable under the federal EEO statutes</u>, regardless of when the discrimination began. In short, each discriminatory pay check delivered resets the statute of limitations' running of the clock.

70.    And last but not least; it is unbeknownst to the Plaintiff, whether or not Exela Inc.'s investigation was conducted internally or by an external Investigator. And thus, Mr. Winns was never given the opportunity to respond to Exela's allegations against him and robbed of his Due Process right as well. *See Poland v. Chertoff*, 494 F.3d 1174, 1182 (9th Cir. 2007)

## DEFENDANT EXELA CANNOT JUSTIFY NOR DEMONSTRATE WHY AN EMPLOYEE OF THE OPPOSITE SEX WAS PAID MORE

71.    First and foremost, in order for an employer, such as Defendant Exela Inc., to defeat or escape liability claims regarding equal pay violations, it is imperative that it precisely exemplify that some type of scheme measuring scheme was implemented through policy, specifically to guard against such assertions. Once again, Exela has failed to follow simple instructions such as the text written in California State statute of Labor Code § 1197.5(a)(1)(A through D):

(1) The wage differential is based upon one or more of the following factors: (A) A seniority system. (B) A merit system. (C) A system that measures earnings by quantity or quality of production. (D) A bona fide factor other than sex, such as education, training, or experience. This factor shall apply only if the employer demonstrates that the factor is not based on or derived from a sex-based differential in compensation, is job related with respect to the position in question, and is consistent with a business necessity. Maxwell, 803 F.2d at 446 (quoting 29 U.S.C. § 2069(d)(1)). "These exceptions are affirmative defenses which the employer must plead and prove." Kouba, 691 F.2d at 875.2

### THE AUDACITY OF ROSA SALAZAR
### DIRECTOR OF SAN JOSE' EEOC

72.    In 2007, the U.S. Supreme Court in essence, crippled statutory protections relating to compensation discrimination. In Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618 (2007), the Supreme Court severely confined the time limit in which compensation discrimination could legally be confronted and therefore, recover economic loss or harm as a result thereof.

73.    Moreover, in 2009, the "Lilly Ledbetter Fair Pay Act of 2009" was passed by Congress under the President Obama's administration. This Act "restores the pre-*Ledbetter* position of the EEOC that <u>each paycheck that delivers discriminatory compensation is a wrong actionable under the federal EEO statutes</u>, regardless of when the discrimination began. As noted in the Act, it recognizes the "reality of wage discrimination" and restores "bedrock principles of American law." <u>https://www.eeoc.gov/statutes/notice-concerning-lilly-ledbetter-fair-pay-act-2009</u>

74.    However, within the Plaintiff's "Notice of Suit Rights" and digitally signed by Director Rosa Salazar on July 21, 2020, the following was endorsed by her:

**26**
**WINNS V. EXELA INC.**
**TITLE VII – DEFAMATION – HARASSMENT – RETALIATION – HOSTILE WORK ENVIRONMENT**

"Equal Pay Act (EPA): EPA suits must be filed in federal or state court within 2 years (3) years for willful violation) of the alleged EPA underpayment. This means that back pay due for any violation that occurred **more than 2 years (3 years) before you file a suit may not be collectible**."

75.     Director Salazar either knew or should have known that the statement she endorsed above was patently false. There is no time limit in regards to "when the compensation began … because in actuality …. "each paycheck that delivers discriminatory compensation is a wrong actionable under the federal EEO statutes". More precisely, her endorsed statement is in direct conflict with the Ledbetter Fair Pay Act of 2009. Additionally, this Act is further expounded upon in the EEOC's Compliance Manual Section on Threshold Issues under **§ 2-IV C.4. "Compensation Discrimination"**.

76.     In short, each pay check Plaintiff Winns is paid less than Ms. Clemente, and just the same as Defendant Exela's refusal to give the Plaintiff a pittance of a mere one dollar ($1) increase as promised within the job description, the Ledbetter Act's accrual provision in which a new statute of limitations is triggered each time an employee receives a discriminatory paycheck, absent the pay rate increase he should have received, due to the Exela's obstructively discriminatory practice(s) remaining in place for the primary purpose to selectively discriminate. Perhaps this explains why Defendant Exela is in no rush to fix the pay rate issues, nor to install a fair framework of which to pay their employees. Moreover, to compound the situation even further, Ms. Salazar's contemptuously endorsed decision is clearly incongruent with the statutory protections afforded to the aggrieved Petitioner. She should be ashamed of herself.

77.     The Lilly Ledbetter Fair Pay Act of 2009 states in most relevant part: "when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice." 29 USC §§ 206(d)(1), 42 U.S.C. 2000e-5 (e)(3)(A).

## FIRST CLAIM OR CAUSE OF ACTION
## UNLAWFUL DISCRIMINATION

27
WINNS V. EXELA INC.
TITLE VII – DEFAMATION – HARASSMENT – RETALIATION – HOSTILE WORK ENVIRONMENT

**BASED ON RACE**

78.    Paragraphs and headings 1 through 45 are hereby incorporated by reference as though fully set forth at length in this claim.

79.    Plaintiff has been the subject of race discrimination by Defendant Exela Inc., including HR Business Partner Cherine Morris, HR Business Partner Betty Smith and Manager Brian Johnson. All three of these agents of Exela have demonstrated high levels sophistication when in discriminatory mode, but their collectively cloaked expressions of racial animus towards the Plaintiff or in the alternative, so-called African Americans always seem to seep through at some point and thereby, giveaway to self exposure.

80.    Defendant deprived Plaintiff and has unlawfully discriminated against Plaintiff Winns based on disparate treatment regarding race and ancestry, in violation of Title VII of the Civil Rights Act of 1964, 42 USC §§ 2000e-2 *et seq.*, Calif. Gov't Code 11135(a).

81.    Defendant Exela Inc. harassed and treated Mr. Winns as an inferior and incessantly harassed him because of his race in violation of the California Fair Employment and Housing Act, California Gov't. Code § 12940 *et seq.*

82.    Plaintiff Winns, an Indigenous, so-called African American, has had his character assaulted at work; intentionally harmed and as such, tainted by the blunt force of a witch hunt investigation that was initiated for nefarious reasons in an "invidious" and retaliatory fashion.

83.    Defendant deprived Plaintiff and has developed and implemented patterns and practices to deny (Indigenous/Black, so-called African American) employees promotion and other employment opportunities on the basis of their race, in violation of Title VII relative to disparate treatment. Moreover, the Petitioner has also applied for numerous vacancies, and to no surprise, it appears that Mr. Winns' applications (x4) were given the mere minimum of a programmed cursory reply through automation. For exemplification: "Dear Harris, We just received your resume and would like to thank you for your interest in working at Exela. This email confirms that your application has been submitted."

84.    Defendant Exela Inc. is unable to escape liability here because they're incapable of proving that it would have taken the same adverse employment actions, had the employee been white.

85.    Plaintiff Winns is currently suffering and will continue to suffer irreparable character, reputation and monetary damages as a direct result of Exela Inc's deprivations and discriminatory practices until this honorable Court grants relief.

### SECOND CLAIM OR CAUSE OF ACTION
### HARASSMENT BASED ON RACE
### GOV'T CODE § 12940 / 42 USC § 2000e-2

86.    Defendant Exela Inc, including its agents, harassed Plaintiff by treating him differently due to his race in violation of California Fair Employment and Housing Act, California Government Code 12900, *et seq.*

87.    At all times, Plaintiff Winns was an employee within the meaning of California Government Code § 12926 and at all times during his employment, he performed in a competent, satisfactory manner as his performance reviews will attest.

88.    Defendants nay have engaged in other discriminatory and harassing practices against Plaintiff that are not yet fully known. At such time, as such discriminatory practices become known to him; Plaintiff will seek leave of Court to amend this Complaint in that regard.

89.    Defendant Exela had actual and constructive knowledge of the conduct described within the paragraphs above. But yet, Defendant Exela still failed to comply with their statutory duty to take all reasonable and necessary steps to eliminate discrimination and harassment from the workplace and to prevent it from occurring in the future.

90.    Defendant Exela held an obligation and still does, to cease intentional discrimination and harassment directed at Plaintiff Winns or any other employee for that matter. Mr. Winns has sustained and he continues to sustain loss of earnings, due to arbitrary, whimsical and or discriminatory hourly pay rate that is clearly unlawful when juxtapose with the pay rate of the opposite sex (Ms. Clemente); which already has been admitted by, to a certain extent, by the Defendant's own legal representative.

91.    "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" are not sufficient to create an actionable claim under Title VII, but the harassment need not be so

severe as to cause diagnosed psychological injury. *Faragher*, 524 U.S. at 788 (internal quotation marks and citation omitted); *see also Harris*, 510 U.S. at 22.

### THIRD CLAIM OR CAUSE OF ACTION
### FAILURE TO TAKE REASONABLE STEPS TO PREVENT
### HOSTILE WORK ENVIRONMENT and or RETALIATION

92.    Defendant Exela Inc. have violated California Government Code § 12940, by failing to adequately supervise, control, discipline and/or otherwise penalize the conduct, acts, and failures to act as described herein. And as such, it was a clear failure on the part of Defendant Exela Inc. to fulfill their statutory duty "to take all reasonable and necessary steps to prevent discrimination, harassment, and retaliation from occurring" in the workplace as required by California Government Code § 12940(k).

93.    Despite the Plaintiff's numerous complaints submitted to Exela's so-called Ethics department regarding hostile work environment, discrimination, harassment and retaliation, the attacks upon Mr. Winns continued, almost unabated throughout his employment for a little over three years.

94.    Defendant Exela's plan appeared to be that of attempting to force the Plaintiff to voluntary quit and thereby, leaving the Defendant unscathed and without liability as well. Mr. Winns has suffered economic losses in wages and benefits, damages to reputation, credit and other financial injuries in an amount to be determined by this honorable court.

95.    As a direct result of Defendant's harassment and discrimination and the failure to take reasonable steps to prevent harassment and retaliation, Mr. Winns has suffered compensatory damages, consisting of mental anguish, humiliation, emotional distress and embarrassment in an amount to be determined according to proof submitted to the court.

96.    Plaintiff sincerely believes that the conduct of agents Brian Johnson, Cherine Morris and Betty Smith, alleges that the outrageous conduct of those mentioned and described above, were done so with malice, fraud and oppression. Moreover, these same plurality of Exela agents, committed their intentional acts with conscious disregard for the Plaintiff's Constitutional rights and with the intent calculated or designed to purposefully injure him. Therefore, Plaintiff

30
**WINNS V. EXELA INC.**
**TITLE VII – DEFAMATION – HARASSMENT – RETALIATION – HOSTILE WORK ENVIRONMENT**

1  Winns is entitled to punitive or exemplary damages from Defendant Exela, in a sum according

2  to proof submitted to this honorable court by the Plaintiff.

3  ### FOURTH CLAIM OR CAUSE OF ACTION

   ### VIOLATION OF SECTION § 1981

4  #### (Race/Ancestral Discrimination – Deprived of Economic Property)

5  97.    Defendant Exela Inc. either knew, or should have know that Petitioner Winns, as an

6  Indigenous person of America, and therefore, has ancestral ties this land, "shall have the same

7  right in every State and Territory . . . to make and enforce contracts . . . security of persons and

8  property as is enjoyed by white citizens"; which are even "protected against nongovernmental

9  discrimination," pursuant to 42 USC Section § 1981(a)(c).

10 98.    The Defendant, Exela Inc., cannot evince that a discriminatory motive was not the "but-for"

11 cause for their collective of adverse employment actions and inactions taken against Mr. Winns,

12 that appears to have been calculated to make him quit; and erroneously believing that

13 Defendant Exela wouldn't eventually having to pay a price for their discriminatory deeds.

14 99.    The Plaintiff, on one hand, has clearly demonstrated on multiple occasions that his

15 Indigenous race/ancestry was one of the "motivating factor(s)", (42 USC § 2000e-2(m) which

16 was the driving determinant behind the adverse actions and inactions taken. However, on the

17 other hand, Defendant Exela still cannot demonstrate that it would have taken the same adverse

18 action in the absence of the impermissible "motivating factor," had the employee been

19 Caucasian/White.

20 100.   Defendant Exela's abundance of racial animus towards Mr. Winns, obviously drove

21 them, via agents Brian Johnson, Cherine Morris and Betty Smith, to conspire, collude and

22 collaborate and thus, deny Mr. Winns the pay rate increase that he should have received as co-

23 workers of the opposite sex were given. Moreover, "but for" causation of Mr. Winns' injury as

24 an Indigenous race/ancestry or in the alternative, so-called African American, it was therefore

25 denied.

26 101. Plaintiff Winns' plausibly alleged and his context specific submission of attached evidence

27 regarding Defendant Exela's "motivating factor(s)" 42 USC § 2000e-2(m) claims and "but for"

causation of injury, 42 USC Section § 1981, because the Plaintiff, no doubt, has "the same right in every state and territory .... as enjoyed by white citizens."

102.   "But for" causation of the humiliation, discrimination, hostile work environment and episodes of harassment by Exela agents Brian Johnson, Cherine Morris and Betty Smith were totally unwarranted. The agents mentioned above, and through their collective expression of an abundance of racial animus towards Mr. Winns. They clearly were aware of the fact they'd never be reprimanded for breaking the policies of Exela, by feigning that <u>yet another investigation</u>, but this time, regarding equal pay was being conducted, in an attempt to merely stall the process of the Plaintiff submitting a complaint to an agency (Labor Commission) that was extraneous or independent of Exela. Moreover, it also appears as if the Defendant's plan was to obstruct and impede continuously, the Petitioner's equal pay efforts in order for the process to reach its maturation period. ("Willful violation may be commenced no later than three years after the cause of action occurs.")

103.   Perhaps unknown to Defendant Exela, these statute of limitations were overturned with the passage of the Lilly Ledbetter Fair Pay Act of 2009. The passage of this legislation under the Obama administration, made "each paycheck that contains discriminatory compensation is a separate violation regardless of when the discrimination began."

104.   Defendant Exela Inc. intentionally deprived Mr. Winns of equal economic "property" or pay parity that was clearly due to him, "as enjoyed by white citizens" and which are equally important, "protected against nongovernmental discrimination and impairment under color of State law."

**FIFTH CLAIM OR CAUSE OF ACTION**
**RETALIATION-DISCRIMINATION BASED ON**
**<u>Defamation (libel or slander) Cal. Civ. Code § 44; <i>see also</i> §§ 45–46.</u>**

105.   Defendant Exela Inc, [the employer] purposely avoided the truth or made a deliberate decision not to acquire knowledge of the facts that might confirm the high probable falsity of the claim(s). And to add insult to injury, Exela didn't even interview or notify Mr. Winns that in accordance with Exela's stipulated policies, which states in relative part on page #59 of the Exela

Employee Handbook policy manual: "<u>Investigation Procedures</u> "Upon receiving a complain, the Company will promptly conduct a fair and thorough investigation into the facts and circumstances of any claim of a violation of this policy or our Equal Employment Opportunity Policy <u>to ensure due process for all parties</u>." Strangely enough, Exela Inc. acquiesced and did just the opposite of what was promised through written policy.

106.    Interestingly enough, for Exela to promise that a fair and thorough investigation into the facts," after receiving a complaint, but yet, failed to follow through as previously pledged due to either a faintness of heart or that <u>only</u> certain employees are subjected or arbitrarily placed under injurious investigation; due to one's immutable characteristics in an attempt to intimidate the subject [Mr. Winns] into withdrawing his equal pay complaint that was submitted to the Labor Commission. Here, the Plaintiff implores Exela to take their pick, because either way, the decision is most certainly drenched in capriciousness. Even further, since Exela failed to interview Petitioner Winns in accordance with EEOC's policy as they should've from a procedural standpoint. However, "but-for" causation of Winns' Indigenous race/ancestry and immutable characteristics, the Defendant resorted to treating him differently once again. Instead, Defendant Exela covertly attempted to strip him of his procedural and Constitutional rights as it is written, because Mr. Winns clearly has "the same right in every state and territory ... as enjoyed by white citizens." 42 USC § 1981.

107.    Due to the Defendants' rootless investigation that was designed to deter and intimidate the Plaintiff's equal pay efforts. These acts were in fact, fraught with an abundance of indifference, conscious disregard, retaliatory and mean spirited, which was done so shortly after the Plaintiff filed a complaint with California's Labor Commission in regards to equal pay. Additionally, these acts committed by Defendant Exela gives further retaliatory credence or belief that: "because he [Plaintiff Winns] has made a charge ... or participated in any manner in an investigation." 42 USC §§ 2000e-3(a), Calif. Labor Code 1102.5(b).

108.    Again and again, Defendant Exela failed miserably to take steps to prevent the continual harassment, discrimination, episodic hostile work environment and retaliation. And since Exela

apparently furthered the harassment of Plaintiff Winns, it seemed as if the discrimination continued almost unabated, perhaps because the attacks upon the Petitioner were ratified by upper management that are still unbeknownst to Mr. Winns. Moreover, even today, the identities of the people in question are held in tight secrecy, in an attempt to either avoid or evade personal liability.

109.    As it pertains to the employer's witch hunt investigation, Defendant Exela Inc. failed to reach a conclusion; Exela failed to draft a detailed report of the Investigator's analysis and findings; Exela failed to close out this supposed investigation and the employer most certainly failed to notify all parties involved in their phantom investigation, pursuant to Exela's Employee's Handbook.

110.    Defendant Exela, it appears, was fully conscious of their actions and inactions when they collectively made a deliberate decision to maliciously attack and subsequently injure Mr. Winns' character through an "invidious" investigation. Clearly, malice was the intentions, and thus, Exela Inc., through their paid agents, "purposely avoided the truth or made a deliberate decision not to acquire knowledge of the facts that might confirm the probable falsity of the charges.[allegations]" [*Antonovich v. Superior Court* (1991) 234 Cal.App.3d 1041, 1048.]

### SIXTH CLAIM OR CAUSE OF ACTION – SECTION 2
### OF THE KU KLUX KLAN ACT CODIFIED AT SECTION 1985
### PRIVATE CONSPIRACY (No State Action Required)

111.    In order to survive a Section § 1985(3) are as follows: a plaintiff must show: (1) a conspiracy; (2) a racial or class based discriminatory animus in furtherance of the conspiracy; (3) an intent to deprive any person of the equal protection of, or equal privileges and immunities under, the law; and (4) a resulting injury to a legal right or property or deprivation of any right.

112.    (1) The paid agents  of Defendant Exela Inc., obviously held their plan in mind; collectively participated through execution thereof; conspired, colluded and collaborated in an attempt to intimidate; subsequently Exela manufactured a <u>conspiracy</u> through a ruse investigation, of which the Plaintiff was intentionally not notified, pursuant to Exela's own written policy. (Exela's Employee Handbook page #09)

113.    (2) Secondly, Defendant then notified California's Labor Commission's office that Mr. Winns was under "investigation." The retaliatory investigation appears to have been initiated shortly after the Plaintiff filed an equal pay complaint with the Labor Commission. 42 USC §§ 2000e-3(a), Calif. Labor Code 1102.5(b). This supposed "investigation" in which the Plaintiff was the subject, was in fact "false and unprivileged." And as a direct result, the Plaintiff has suffered and subsequently was "injured" emotionally and "injured in his occupation [reputation and economic bias]" as well. Calif. Civ. Code § 46

114.    (3) Thirdly, the commencement of Exela's failed stratagem of an "investigation" was done so invidiously to intimidate, arouse contempt, resentment or even stir up an aura of suspiciousness in an attempt to bring anger, scorn and/or racial animus against Mr. Winns. Additionally, the supposed "investigation" also brought about further delay or in the alternative, "deprive any person [Winns] of equal protection of, or equal privileges [equal pay/economic bias] as those of the opposite sex under the law." California Labor Code § 1197.5 and Ledbetter Fair Pay Act of 2009 – 29 USC § 206(d)(1).

115.    Here, it appears that the agents of Exela Inc. covertly worked together as "conspirators", metaphorically danced in concert and thus, executed an instrument disguised as an "investigation" who seemingly sought to deny the Plaintiff equal protection of the law.

116.    (4) Moreover, and as a direct result of Defendant Exela's actions and inactions, Mr. Winns has suffered and will continue to suffer. Moreover, the Defendant has also "injured" Mr. Winns. But it didn't cease there. The agents, while working on behalf of Exela, designed a ploy to deprive the Petitioner of property, by means of [economic bias/equal pay based upon sex] through a hollow investigation that could clearly be equated with bringing about resentment upon Mr. Winns. To me, this was merely an outward expression, due to prejudicial or "invidious," personal feelings perhaps internally held within each them, in regards to the Plaintiff's Indigenous race/ancestry and physical characteristics. The language and legislative history of § 1985(3) establish that it requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge, supra,*

at 403 U. S. 102. Pp. 463 U. S. 834-835. See *Bray v. Alexandria* Women's Health Clinic, 506 U.S. 263, 268 (1993) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). Second, the equal protection language makes clear that Section 1985(3) (clause i) creates no substantive rights. The plaintiff must identify elsewhere a right to which the conspiracy sought to deny equal access. See United Bhd. of *Carpenters & Joiners v. Scott*, 463 U.S. 825, 833 (1983); *Great American Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 376 (1979).

117.    It appears that Defendant Exela has worked tirelessly through their agent conspirators to deprive Mr. Winns of the right to equal pay. California Labor Code § 1197.5 and Ledbetter Fair Pay Act of 2009 – 29 USC § 206(d)(1). Thereby, and through manufactured schemes and controversies, the Defendant has intentionally violated federal and State statutes to deprive or strip the Plaintiff's of rights that were statutorily afforded to him. Their garden variety of schemes and other elementary contraptions were done so with malice and an abundance of indifference, due to Petitioner Winns' Indigenous race/ancestry and physical characteristics. Defendant Exela either knew or should have known that what they were doing through their agents were against clearly defined statutes. Even further, I would also parenthetically here that the statutes tainted by convolution. Just as *Griffin v. Breckenridge*, <u>403 U. S. 88</u>, upheld the application of § 1985(3) to <u>purely private conspiracies</u> aimed at interfering with rights [and privileges] conferred upon Plaintiff Winns through laws. However, and strangely enough, Defendant Exela, through their actions and inactions, appears to be somewhat obsessed with uprooting these same rights alluded to within the statutes, due to their racial animus held within and expressed outwards, in a bright line direction towards Plaintiff Winns. And due to Defendant Exela's collective efforts which seem to be supported by their collectively tortured logic, and in short, have proffered thus far, nothing more than quilted patches of falsehoods as their explanation for what they have mean spiritedly and intentionally done to Mr. Winns.

118.    Plaintiff Winns was also encourage by Alejandro Cortez, Industrial Relations Representative at California's Labor Commission to pursue "retaliation" against Exela Inc. claims through the following statement: " While your case has been closed with this office, you

1    are advised that you may be able to bring an action against the employer in civil court to pursue

2    your retaliation claim. You may wish to consult an attorney to determine your rights and the

3    deadlines for filing a civil action." [9.9.2019]

4    119.    More to the point and as Justice Blackmun once asserted: "That *Griffin* clearly repudiates

5    the notion that state action may be required in some section 1985(3) actions. The specific

6    language referred to reads: An element of the cause of action established by the first section (of

7    the Act of 1871 ), now 42 U.S.C. § 1983, is that the deprivation complained of must have been

8    inflicted under color of state law. To read any such requ1rement into § 1985(3) would thus

9    deprive that section of all its independent effect." *Great American Federal Savings & Loan*

10   *Association v. Novotny*, 442 U.S. 366 (1979).

<strong>SEVENTH CLAIM OR CAUSE OF ACTION</strong><br>
<strong>[ RETALIATION Calif. Labor Code 1102.5 <em>et seq.</em> ]</strong><br>
<strong>[ 42 USC 2000e-3(a) ]</strong>

120.    California Labor Code § 1102.5 prohibits employers, *inter alia*, from retaliating against an

employee because the employer believes that the employee may disclose information to a

government agency with authority to investigate where the employee has a reasonable belief

that the information discloses a violation of a state or federal statute. 42 USC 2000e-3(a) ["or

because he has made a charge, or participated in any manner in an investigation."] Cal. Lab.

Code § 1102.5(b).

121.    Defendant Exela's unlawful actions were intentional, willful, malicious, and/or done so

with reckless disregard of Plaintiff Winns' right to be free from acts of retaliation.

122.    Plaintiff Winns is informed and believes and thereon alleges that because of his internal

complaints about the various discriminatory [or "invidious"] acts, Defendant Exela, through

their agents, informed California's Labor Commission that Mr. Winns was under "investigation."

On one hand, it appears that Exela was under the belief that Petitioner Winns would disclose

information concerning his equal pay claims to a government agency with authority to

investigate. On the other hand, perhaps Exela's utterance to the Labor Commission that the

Petitioner was under an "investigation" to impugn or defile his character and subsequently

further stall review of the Petitioner's equal pay claims by the Defendant communicating to the Labor Commission that Mr. Winns under a ruse "investigation". This, I believe, was done so in an attempt to hinder and "intimidate" the Petitioner into withdrawing his complaint. Unfortunately for Exela, perhaps things didn't work out in the manner, in which the Defendant had hoped for. 42 USC § 1985(2)(3)

123.    As a direct, legal and proximate result of the retaliation, Plaintiff Winns has sustained economic and emotional injuries, resulting in damages in an amount to be determined by the court.

124.    Plaintiff Winns is entitled to reasonable attorneys' fees and costs of suit, if this honorable court determines at a later point that in the interest of just, a legal representative is in fact appointed, by way of motion on his behalf.

125.    Moreover, "This Court [US Supreme Court] has long interpreted §§1981 and 1982 alike because they were enacted together, have common language, and serve the same purpose of providing black citizens the same legal rights as enjoyed by other citizens. In 1989, *Patterson* v. *McLean Credit Union*, 491 U. S. 164, 177, without mention of <u>retaliation</u>, narrowed §1981 by excluding from its scope conduct occurring after formation of the employment contract, where <u>retaliation</u> would most likely be found. Subsequently, Congress enacted the Civil Rights Act of 1991, which was designed to supersede *Patterson*". (*CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008))

<u>

**EIGHTH CLAIM OR CAUSE OF ACTION**
**[ NEGLIGENT SUPERVISION ]**
</u>

126.    First and foremost, Defendant Exela Inc. had authority to supervise their employees and/or agents and thus, inform all said employees of the potential legal liability that the company could sustain as a result discrimination/retaliatory acts.

127.    Plaintiff Winns is informed and believes and thereon alleges that Defendants Exela knew or reasonably should have known that their failure adequately to supervise their employees created the risk of potential legal liability, by those employees, of the wrongful conduct alleged herein, but that Defendant's upper management failed to take appropriate corrective action to

cease the harassment and other discriminatory conduct. These acts were clearly incongruent with various statutes, State, federal and including the company's written policies as well.

128.    Plaintiff Winns is informed and believes and thereon alleges that Defendant's failure to take appropriate corrective action resulted in the commission of the wrongful conduct alleged herein, and subsequently, needlessly caused Mr. Winns to suffer emotional injury, reputational damage and economic loss or harm.

**NINTH CLAIM OR CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA's EQUAL PAY ACT**
**LEDBETTER FAIR PAY ACT OF 2009**

129.    Plaintiff Winns is informed and believes and thereon alleges that Defendant's failure to take appropriate corrective action resulted in the commission of the wrongful conduct alleged herein, and subsequently, needlessly caused Mr. Winns to suffer economic loss or harm.

130.    Defendant Exela Inc. either knew or should have known that the failure to implement a "seniority system," would result in violation of equal pay statutes at the State and federal level. They also knew or should have known that absent a "seniority system", subsequently, arbitrariness, partisanship and favoritism would rule in place of unenforced policies and thereby, eventually display passive contempt for the laws mentioned herein.

131.    Defendant Exela Inc. it seems, was well aware that refusing to install "a system which measures earnings by quantity or quality of production", would at some point, give way to inequality and the perhaps provide cover or to camouflage their wrongdoings relative to equal pay amongst employees.

132.    Defendant Exela, it seems, pushes an awkward narrative that a desk-bound (Helpdesk) employee is justified receiving a higher pay rate than another employee of the opposite, who's tasks require much more physical exertion; constantly mobile and is much more productive.

133.    Defendant Exela was more than likely fully conscious that "a differential" in pay had to be justified by job related factors other than sex. On one hand, Mr. Winns has in fact established a prima facie case regarding equal pay. On the other hand, the ball is now in Exela's possession.

134.    Additionally, Exela Inc. should also be aware by now that they also have the burden of

proving that, "sex provide[d] *no* part of the basis for the wage differential." *Balmer*, 423 F.3d at 612 (quoting *Timmer v. Mich. Dep't of Commerce*, 104 F.3d 833, 844 (6th Cir. 1997)) (emphasis in original); *see also Md. Ins. Admin.*, 879 F.3d at 121 (citing *Stanziale*, 200 F.3d at 107–08); *Mickelson*, 460 F.3d at 1312.

135.    And as such, for Exela to either claim or even attempt to prove that, "sex played no part in the wage differential," between the Plaintiff and his female comparator, will be extremely difficult to do, when clearly, Defendant Exela failed to install a "seniority system, a merit system" or even a process that would "measure quantity or quality of production" to justify their questionable position.

136.    Moreover, Defendant Exela's representative has failed miserably to justify the female comparator's higher rate of pay for less work and less productivity when juxtapose with the physicality, accountability and responsibility as Mr. WINNS. And such as it is, the Ledbetter Act's accrual provision in which a new statute of limitations is triggered or begins anew each time an employee receives a discriminatory paycheck, absent the pay rate increase, retroactive pay with interest and other benefits that he would've most certainly earned and deservingly been entitled to, absent Exela's intentional deprivations described herein.

137.    Defendant Exela has also erroneously averred the following through their representative and within the text of Exela's Position Statement: "Notably, Mr. Winns' offer letter makes no representations about an increase after 90 days of employment. Again and again, the Defendant's crooked narrative, calculated intentionally in another attempt to misdirect the Petitioner argument in order to stir up confusion. This effort has also failed. Here, the Defendant's assertions are totally false. For clarification purposes, the Plaintiff at no time mentioned that the offer letter is the document of record that promised, that after 90 days of employment, he'd receive an increase in hourly rate of pay. However, Mr. Winns did in fact allude to the Defendant's job description which clearly states the following: "Compensation will start at around $15.00 per hour and candidates who successfully complete their first 90 days of employment will also be given an additional $1.00 increase to their hourly rate." (attachment D)

138.    In summary, Defendant Exela's representative also contends within their EEOC's "Position Statement the following: "The Company is exceedingly proud of the diversity of its workforce and is committed to providing a work environment free of discrimination." I would add parenthetically here that perhaps or it appears that Exela is also equally or "exceedingly proud," NOT to have at least one so-called African American within the ranks of lower or upper management at its Milpitas, CA. location as well.

139.    Defendant Exela's representative also contends the following in another attempt to justify Ms. Clemente's higher pay rate by stating: "These justifications include but are not limited to, Ms. Clemente's seniority; Ms. Clemente's education, skills and qualifications." However, in stark contrast and on the EEOC's Ledbetter Fair Pay Act of 2009 page, the Agency asserts the following: "Therefore, the skill required to perform the two jobs is substantially equal. A college degree does not justify a higher salary because it is not needed to perform the job." Again and again, Exela's representative continually asserts one thing or another, but only to be proven by the Plaintiff that their belief is clearly erroneously proffered and nothing is presented to further drive home their point for clarification.

140.    Here, the Agency vividly states that "education" cannot be utilized to justify a higher rate of pay when a degree or higher level of education is not needed to perform the job in question. But yet, Exela's representative still attempted to utilize "education" to substantiate or as a rationalization point to explain the difference between Mr. Winns' and his female comparator's higher rate of pay. Once again, Defendant Exela has failed miserably to proffer or to establish a valid reasoning for Ms. Clemente higher rate of pay for her desk-bound tasks, "less production, less accountability and less responsibility" as well.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff WINNS prays for relief as follows:

1.  For a declaration that Defendants' actions, inactions and practices as alleged herein are in fact, unlawful;

2. For retroactive pay with interest, beginning at the ninety-first (91) day of employment, to the present, regarding an increase in pay after completion of probation. This probationary pay increase was granted to others but denied to petitioner WINNS.

3. For lost wages, penalties and all other compensation denied or lost to Plaintiff WINNS by reason of Defendant Exela's unlawful actions, in an amount to be proven by the court;

4. For compensatory damages for Plaintiff WINNS' emotional pain and suffering, in an amount to be proven by the court as well;

5. For punitive damages in an amount to be determined by the court;

6. For an order enjoining Defendant Exela and agents from further engaging in the unlawful acts complained of herein;

7. For such other and further relief as this Court deems just and proper.

8. For liquidated damages;

9. For interest on lost wages, compensation, and damages, including pre- and post judgment interest and an upward adjustment for inflation;

10. For back pay and any other benefits to which Plaintiff WINNS would have been entitled to by reason of his employment by Defendant Exela Inc.; according to submitted proof.

11. For reasonable attorneys' fees and costs of suit pursuant to 42 U.S.C. § 2000e-5(k), 42 U.S.C. § 1988, Cal. Gov't Code § 12965(b), Cal. Code Civ. Pro. § 1021.5, and other laws; and

12. For such other and further relief as this Court deems just and proper.

In summary, Mr. WINNS has engaged with various government entities within Santa Clara County at various levels over the pas twenty (20) years. Needless to say, each and every encounter has been negative and to the Plaintiff's detriment. Moreover, the Plaintiff's experiences ran the gamut from being maliciously prosecuted (civil case), which resulted in being blackballed, and thus, unemployed for five (5) years and to the other end of the spectrum,

question, which were clearly in favor of Mr. WINNS' argument. Now, we have Mrs. Salazar, EEOC Director in San Jose displaying her abundance of contempt by endorsing a Decision that were once again, unquestionably incongruent with the Lilly Ledbetter Fair Pay Act of 2009 and simply eschewing the remainder of Plaintiff WINNS' arguments without compelling Defendant Exela Inc. for the production of documents.

Respectfully submitted,

Dated: 24th day of September, 2020

/s/
Harris L. Winns
Plaintiff, *Pro Se*

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: Harris L. Winns<br>1310 Foxdale Loop, # 202<br>San Jose, CA 95122 | From: San Jose Local Office<br>96 North Third Street<br>Suite 250<br>San Jose, CA 95112 |
|---|---|

☐ *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 556-2019-01103 | Lisa B. Fung,<br>Investigator | (408) 291-4247 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Digitally signed by Rosa M. Salazar
DN: cn=Rosa M. Salazar, o=U.S. EEOC,
ou=San Jose Local Office Director,
email=rosa.salazar@eeoc.gov, c=US

July 21, 2020

Enclosures(s)

**Rosa M. Salazar,**
**Director**

*(Date Mailed)*

cc:   **Justin Heinrich**
**Assistant General Counsel**
**EXELA ENTERPRISE SOLUTIONS INC**
**300 First Stamford Place**
**Second Floor West**
**Stamford, CT 06902**

Exhibit

A



≡ M Gmail

Compose

Inbox          217

Starred

Snoozed

Q   request pay scale

X   ▸

© ⠿ ‹ ›



## Request for copy of company's Pay Scale    Inbox ×

Harris Winns -X (hwinns - Novitex at Cisco) <hwinns@cisco.com>         Nov 27, 2018, 10:54 AM

to Brian, Lonell, me

Hi Brian and LC,

when either of you have a chance, please provide me with either an electronic or hard-copy of Novitex's/Exela's pay scale. Your
assistance is greatly appreciated.

Regards,

Harris



ııı1ıı.
CISCO

Harris Winns                        Cisco Systems, Inc.
Services - Mail & Shipping          755 Sycamore Drive
hwinns@cisco.com                    MILPITAS
Tel: +1 408 526 7998                95035
                                    United States
                                    cisco.com

🖶  Think before you print.

This email may contain confidential and privileged material for the sole use of the intended recipient. Any
review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or
authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this
message.

Please click here for Company Registration Information.

**Exhibit B**

# Schedule

Return

**Time Period: Range of Dates**                                           Printed: 11/08/2019
**Dates: 1/01/2019 - 11/08/2019**

**Name: Winns, Harris   ID: 2009140**
**Primary Account(s):** 7/21/2018 - 7/20/2019   JG2/0000/533030/0000/0733008/0000/CSA001
                        7/20/2019 - forever   JG2/0000/533030/0000/0733008/0000/357001

**Standard Hours:**
**Daily: 0:00        Weekly: 35:00        Per Pay Period: 0:00**

| Day Date | In | Out | Shift Label | Shift Type Pay Code | Amount | Transfer Work Rule | Shift Total |
|---|---|---|---|---|---|---|---|
| *Comments* | | | | *Transfer Account* | | | |
| Tue 1/01 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Wed 1/02 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Thu 1/03 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Fri 1/04 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Mon 1/07 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Tue 1/08 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Wed 1/09 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Thu 1/10 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Fri 1/11 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Mon 1/14 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Tue 1/15 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Wed 1/16 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Thu 1/17 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Fri 1/18 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Mon 1/21 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Tue 1/22 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Wed 1/23 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Thu 1/24 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Fri 1/25 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Mon 1/28 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Tue 1/29 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Wed 1/30 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Thu 1/31 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Fri 2/01 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Mon 2/04 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Tue 2/05 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Wed 2/06 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Thu 2/07 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Fri 2/08 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Mon 2/11 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Tue 2/12 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Wed 2/13 | 7:30AM | 4:30PM | | Regular | | | 8:00 |
| Thu 2/14 | 7:30AM | 4:30PM | | Regular | | | 8:00 |

1

| | | | | |
|---|---|---|---|---|
| Fri 2/15 | 7 30AM | 4:30PM | Regular | 8 00 |
| Mon 2/18 | 7:30AM | 4:30PM | Regular | 8 00 |
| Tue 2/19 | 7.30AM | 4:30PM | Regular | 8 00 |
| Wed 2/20 | 7:30AM | 4:30PM | Regular | 8 00 |
| Thu 2/21 | 7:30AM | 4:30PM | Regular | 8 00 |
| Fri 2/22 | 7.30AM | 4:30PM | Regular | 8 00 |
| Mon 2/25 | 7.30AM | 4:30PM | Regular | 8 00 |
| Tue 2/26 | 7 30AM | 4:30PM | Regular | 8 00 |
| Wed 2/27 | 7:30AM | 4:30PM | Regular | 8:00 |
| Thu 2/28 | 7:30AM | 4:30PM | Regular | 8:00 |
| Fri 3/01 | 7:30AM | 4:30PM | Regular | 8 00 |
| Mon 3/04 | 7:30AM | 4:30PM | Regular | 8 00 |
| Tue 3/05 | 7:30AM | 4:30PM | Regular | 8:00 |
| Wed 3/06 | 7:30AM | 4:30PM | Regular | 8 00 |
| Thu 3/07 | 7 30AM | 4 30PM | Regular | 8:00 |
| Fri 3/08 | 7 30AM | 4:30PM | Regular | 8:00 |
| Mon 3/11 | 7:30AM | 4:30PM | Regular | 8:00 |
| Tue 3/12 | 7:30AM | 4 30PM | Regular | 8 00 |
| Wed 3/13 | 7:30AM | 4:30PM | Regular | 8:00 |
| Thu 3/14 | 7:30AM | 4:30PM | Regular | 8 00 |
| Fri 3/15 | 7:30AM | 4:30PM | Regular | 8 00 |
| Mon 3/18 | 7:30AM | 4:30PM | Regular | 8 00 |
| Tue 3/19 | 7:30AM | 4:30PM | Regular | 8 00 |
| Wed 3/20 | 7:30AM | 4:30PM | Regular | 8 00 |
| Thu 3/21 | 7:30AM | 4:30PM | Regular | 8 00 |
| Fri 3/22 | 7:30AM | 4:30PM | Regular | 8:00 |
| Mon 3/25 | 7:30AM | 4:30PM | Regular | 8:00 |
| Tue 3/26 | 7:30AM | 4:30PM | Regular | 8:00 |
| Wed 3/27 | 7:30AM | 4:30PM | Regular | 8:00 |
| Thu 3/28 | 7:30AM | 4:30PM | Regular | 8:00 |
| Fri 3/29 | 7:30AM | 4:30PM | Regular | 8:00 |
| Mon 4/01 | 7:30AM | 4:30PM | Regular | 8 00 |
| Tue 4/02 | 7:30AM | 4:30PM | Regular | 8:00 |
| Wed 4/03 | 7:30AM | 4:30PM | Regular | 8 00 |
| Thu 4/04 | 7:30AM | 4:30PM | Regular | 8:00 |
| Fri 4/05 | 7:30AM | 4:30PM | Regular | 8 00 |
| Mon 4/08 | 7 30AM | 4:30PM | Regular | 8 00 |
| Tue 4/09 | 7:30AM | 4:30PM | Regular | 8:00 |
| Wed 4/10 | 7:30AM | 4:30PM | Regular | 8:00 |
| Thu 4/11 | 7:30AM | 4 30PM | Regular | 8:00 |
| Fri 4/12 | 7:30AM | 4:30PM | Regular | 8:00 |
| Mon 4/15 | 7:30AM | 4:30PM | Regular | 8 00 |
| Tue 4/16 | 7:30AM | 4:30PM | Regular | 8:00 |
| Wed 4/17 | 7:30AM | 4:30PM | Regular | 8:00 |
| Thu 4/18 | 7:30AM | 4:30PM | Regular | 8:00 |
| Fri 4/19 | 7:30AM | 4:30PM | Regular | 8:00 |
| Mon 4/22 | 7:30AM | 4:30PM | Regular | 8:00 |
| Tue 4/23 | 7:30AM | 4:30PM | Regular | 8:00 |
| Wed 4/24 | 7:30AM | 4:30PM | Regular | 8:00 |
| Thu 4/25 | 7 30AM | 4 30PM | Regular | 8 00 |
| Fri 4/26 | 7 30AM | 4 30PM | Regular | 8 00 |
| Mon 4/29 | 7:30AM | 4 30PM | Regular | 8 00 |

2

| | | | | |
|---|---|---|---|---|
| Tue 4/30 | 7:30AM | 4:30PM | Regular | 8 00 |
| Wed 5/01 | 7:30AM | 4:30PM | Regular | 8 00 |
| Thu 5/02 | 7:30AM | 4 30PM | Regular | 8:00 |
| Fri 5/03 | 7 30AM | 4.30PM | Regular | 8:00 |
| Mon 5/06 | 7 30AM | 4 30PM | Regular | 8:00 |
| Tue 5/07 | 7 30AM | 4:30PM | Regular | 8:00 |
| Wed 5/08 | 7 30AM | 4 30PM | Regular | 8 00 |
| Thu 5/09 | 7 30AM | 4 30PM | Regular | 8 00 |
| Fri 5/10 | 7 30AM | 4 30PM | Regular | 8:00 |
| Mon 5/13 | 7 30AM | 4 30PM | Regular | 8:00 |
| Tue 5/14 | 7 30AM | 4 30PM | Regular | 8:00 |
| Wed 5/15 | 7 30AM | 4:30PM | Regular | 8 00 |
| Thu 5/16 | 7 30AM | 4:30PM | Regular | 8:00 |
| Fri 5/17 | 7 30AM | 4:30PM | Regular | 8:00 |
| Mon 5/20 | 7:30AM | 4:30PM | Regular | 8 00 |
| Tue 5/21 | 7:30AM | 4:30PM | Regular | 8:00 |
| Wed 5/22 | 7:30AM | 4:30PM | Regular | 8:00 |
| Thu 5/23 | 7:30AM | 4:30PM | Regular | 8:00 |
| Fri 5/24 | 7:30AM | 4:30PM | Regular | 8:00 |
| Mon 5/27 | 7.30AM | 4 30PM | Regular | 8:00 |
| Tue 5/28 | 7 30AM | 4 30PM | Regular | 8 00 |
| Wed 5/29 | 7 30AM | 4.30PM | Regular | 8 00 |
| Thu 5/30 | 7 30AM | 4 30PM | Regular | 8 00 |
| Fri 5/31 | 7 30AM | 4:30PM | Regular | 8 00 |
| Mon 6/03 | 7 30AM | 4:30PM | Regular | 8 00 |
| Tue 6/04 | 7:30AM | 4:30PM | Regular | 8:00 |
| Wed 6/05 | 7:30AM | 4:30PM | Regular | 8:00 |
| Thu 6/06 | 7:30AM | 4:30PM | Regular | 8:00 |
| Fri 6/07 | 7:30AM | 4:30PM | Regular | 8:00 |
| Mon 6/10 | 7:30AM | 3:30PM | Regular | 8:00 |
| Tue 6/11 | 7:30AM | 3:30PM | Regular | 8:00 |
| Wed 6/12 | 7:30AM | 3 30PM | Regular | 8:00 |
| Thu 6/13 | 7:30AM | 3:30PM | Regular | 8:00 |
| Fri 6/14 | 7 30AM | 3:30PM | Regular | 8 00 |
| Mon 6/17 | 7 30AM | 3:30PM | Regular | 8 00 |
| Tue 6/18 | 7 30AM | 3:30PM | Regular | 8 00 |
| Wed 6/19 | 7:30AM | 3:30PM | Regular | 8 00 |
| Thu 6/20 | 7:30AM | 3:30PM | Regular | 8:00 |
| Fri 6/21 | 7:30AM | 3:30PM | Regular | 8:00 |
| Mon 6/24 | 7:30AM | 3:30PM | Regular | 8:00 |
| Tue 6/25 | 7:30AM | 3:30PM | Regular | 8 00 |
| Wed 6/26 | 7:30AM | 3:30PM | Regular | 8 00 |
| Thu 6/27 | 7 30AM | 3 30PM | Regular | 8:00 |
| Fri 6/28 | 7:30AM | 3:30PM | Regular | 8:00 |
| Mon 7/01 | 7:30AM | 3:30PM | Regular | 8:00 |
| Tue 7/02 | 7:30AM | 3:30PM | Regular | 8:00 |
| Wed 7/03 | 7:30AM | 3:30PM | Regular | 8:00 |
| Thu 7/04 | 7:30AM | 3:30PM | Regular | 8:00 |
| Fri 7/05 | 7:30AM | 3:30PM | Regular | 8 00 |
| Mon 7/08 | 7:30AM | 3:30PM | Regular | 8 00 |
| Tue 7/09 | 7:30AM | 3:30PM | Regular | 8.00 |
| Wed 7/10 | 7:30AM | 3:30PM | Regular | 8.00 |

# Exhibit C

REGIONAL
MEDICAL CENTER

**Regional Medical Center**
225 N Jackson Ave
San Jose, CA 95116
(408) 259-5000

**Patient: HARRIS WINNS**
DOB: 10/10/1965 Patient Ph:(408)836-8563
Physician: Siobhan Finn, PA
MR #: Q000961440
Account #: Q00855769633
Today's Date: 9/21/2019

## General Emergency Department Discharge Instructions

The treatment and evaluation you received have been provided on an emergency basis only and is not intended to be a substitute for, or an effort to provide complete medical care. It is important that you follow up with your primary care provider for ongoing monitoring and intervention. If your symptoms become worse or you do not improve as expected and you are unable to reach your usual health care provider, you should return to the Emergency Department. We are available 24 hours a day.

If you received medication for sedation, pain or nausea, the following applies: Do NOT drive, use heavy machinery or do anything that requires attention today or while taking this medication. Be careful walking up and down stairs. If you get dizzy, sit or lie down. Do not drink alcohol with this medication. Children should be supervised carefully.

**You were treated in the Emergency Department by:**
Primary Provider: Siobhan Finn, PA

**The Following Instructions Were Selected for You Today: Insomnia**

Insomnia

You have been seen for insomnia.

Insomnia is the medical term for sleep problems. There need to be symptoms for a month to officially call a sleep problem "insomnia." However, patients often come in for sleep issues that have been going on for much less time.

The National Sleep Foundation reports that insomnia is the most common sleep problem for Americans. If it is hard to fall or stay asleep and you are tired or drowsy during the day for more than a month, you may have insomnia.

Insomnia may be short-term or long-term. The National Institute of Neurological Disorders and Stroke has reported on chronic, long-term sleep disorders. It shows that such disorders affect at least 40 million Americans each year. Untreated sleep deprivation (not sleeping enough) gets in the way of work, your ability to drive and normal day-to-day activities.

Insomnia affects mood, energy level, and physical health. Not having enough sleep can cause common problems (like headaches, backaches or stomach problems) and make them worse. Studies show chronic sleep problems can also weaken the immune system. This raises the risk for infections like colds, flu, pneumonia, etc.

Many health and lifestyle factors can contribute to insomnia. These include stress, depression and medical illnesses. They also include pain and medicines. They also include specific sleep disorders like sleep apnea, for example.


PINS

**Today's Date:** 9/21/2019                                    **Patient: HARRIS WINNS**
                          DOB: 10/10/1965  Account #: Q00855769633

---

Fortunately, insomnia can be treated.  Most of these are lifestyle changes.  They also involve good sleep habits (sleep hygiene).  Effective medicines may be a short-term solution.

For more information on sleep disorders, talk to your doctor.  You can also contact the National Sleep Foundation at (202) 347-3471.  You can also visit www.sleepfoundation.org.

YOU SHOULD SEEK MEDICAL ATTENTION IMMEDIATELY, EITHER HERE OR AT THE NEAREST EMERGENCY DEPARTMENT, IF ANY OF THE FOLLOWING OCCURS:
- Your sleep problem gets worse with hallucinations, strange behavior or not being able to sleep at all.
- You feel depressed and think you might hurt yourself or anyone else.

---

**Follow Up Information:**

Follow up with Jose Maria Guanzon MD in 1-2 days.  Call as soon as possible to arrange.
Follow up with RMC - ER, at 225 N JACKSON AVENUE, SAN JOSE, CA  95116, Phone: (408)259-5000 if not improving.

---

*If you have been referred to a specialist, you may receive a telephone call or text from Regional Medical Center Appointment Services to assist with scheduling your follow-up appointment. If you would like assistance in scheduling your specialty appointment and have not received a telephone call or text, please call Appointment Services directly at (408) 678-3400.*

**What To Do:**
- Take this sheet with you when you go to your follow-up visit.
- If you have any problem arranging the follow-up visit, contact the Emergency Department immediately.
- Take all medications as directed.

**You Were Given The Following Excuses and Limitations:**
HARRIS WINNS was seen on 9/21/2019 and is excused from work from 9/21/2019 through 9/23/2019

**Studies Done in the Emergency Department:**

- There are occasions where additional lab tests return - such as a culture result or an X-ray or EKG - is further reviewed after you are discharged. If a change in your diagnosis or treatment is indicated, we will attempt to contact you. It is critical that we have a current phone number for you.

- If you had X-rays done, we can provide you a CD with those X-rays for your review and follow-up.

---


PINS

**Today's Date: 9/21/2019**                                    **Patient: HARRIS WINNS**
                                           **DOB: 10/10/1965  Account #: Q00855769633**

---

- Culture results may take 2-3 days. We review many culture results and will attempt to contact you if the results are significant or may change your treatment.

**Additional Information or Instructions:**

*If side effects develop, such as a rash, difficulty breathing, or a severe upset stomach,
stop the medication and call your doctor or the Emergency Department.*

MyHealthOne is the Regional Medical Center patient portal located here:
http://regionalmedicalsanjose.com/myhealthone
Start managing your health today by using MyHealthOne portal. Once you create your account you can view hospital visits, view hospital lab results, schedule follow-up appointments and attend health related classes and events.
Questions about MyHealthOne?  Call (855)422-6625

I, HARRIS WINNS, understand the instructions and will arrange for follow-up care.

_____
PATIENT/REPRESENTATIVE SIGNATURE

_____
STAFF SIGNATURE

_____
DATE

_____
DISCHARGE TIME

---



| | |
|---|---|
| Regional Medical Center<br>225 N Jackson Ave<br>San Jose, CA  95116<br>(408) 259-5000 | **HARRIS L WINNS**<br>Pat ID:   Q000961440<br>Acct #:   Q00855769633<br>Printed:   September 21, 2019<br>By:   Siobhan Finn, PA |

## PATIENT EXCUSE

HARRIS L WINNS was seen on 9/21/2019 and is excused from work from 9/21/2019 through 9/23/2019

Siobhan Finn, PA

# Exhibit D

- **Customer Service Associate –** Posted on January 18th, 2018
  - Milpitas, CA

**•Position Exempt Status**

•Non-Exempt

**Weekly Scheduled Hours**

40

**Scheduled Shift**

1st Shift

**Job Description**

Novitex Enterprise Solutions is looking to fill a Customer Service Associate position in Milpitas, CA. This position will work onsite Monday – Friday, 8:00 a.m. to 4:30 p.m., 40 hours per week. Compensation will start around $15.00 per hour and candidates who successfully complete their first 90 days of employment will also be given an additional $1.00 increase to their hourly rate.

In addition to being organized and able to multitask, this role requires a go-getter with a positive work ethic who is excited to work with the leading provider of innovative, cloud-based solutions in the document outsourcing industry.

<ins>Some perks of the job:</ins>

*Employees working 30 or more hours per week may qualify for:*

- Paid holidays, vacation and sick time
- 401k
- Benefits Health & Welfare Package including –Medical, Dental, Vision
- Employer Matching Health Savings Account
- Exclusive discounts on entertainment, health & wellness, travel and MUCH MORE!

<ins>So what will you actually be doing?</ins>

With a strong attention to detail, this role will facilitate a variety of tasks to ensure high levels of customer service in a fast paced environment

<ins>A Customer Service Associate's daily tasks will involve:</ins>

- Perform various Mail Center activities (sorting, metering, folding, inserting, delivery, pickup, etc.)
- Lift heavy boxes, files or paper when needed, which may be up to 55lbs.
- Create visitor and guest badges
- Maintain the highest levels of customer care while demonstrating a friendly and cooperative attitude

# Exhibit

# E

## Harris Winns -X (hwinns - Novitex at Cisco)

| | |
|---|---|
| **From:** | Brian Johnson -X (bljohnso - Novitex at Cisco) |
| **Sent:** | Tuesday, July 23, 2019 8:19 AM |
| **To:** | nw-sw-lobbyambassadors(mailer list); bry22staff(mailer list); reception(mailer list); Andrew Bartroff -X (abartrof - Novitex at Cisco); Edward Montejano -X (emonteja - Novitex at Cisco) |
| **Cc:** | Lonell Chattmon -X (lchattmo - EXELA TECHNOLOGIES INC at Cisco); Lilla S Walgraeve - X (lwalgrae - Novitex at Cisco); Andrea Mercado -X (anmercad - Novitex at Cisco) |
| **Subject:** | RE: 7/22/19 Reminder - PAYROLL RELATED - URGENT - PLEASE READ IMMEDIATELY! |
| **Attachments:** | NovitexPayrollSystemMigration.pdf; Exela Employee Registration Instructions.pdf |

Hello Team,

Remember to register ASAP today..

**ADP eTime will not be migrated at this time. However, please note that eTime will be offline on Tuesday, July 23rd due to this migration.**

Managers will need to enter their employee's time manually once the system is back online.

We anticipate eTime to be available once more on Wednesday, July 24, 2019.

We will send you a communication once the system is back online and available to you.

Thank You ..



**Brian L. Johnson**
**Service Delivery Manager**
Workplace Resources – Exela @ Cisco

755 Sycamore Drive
Milpitas, CA 95035
O: 1- 408-526-7195  C: 1-408-422-6412
bljohnso@cisco.com



**From:** Brian Johnson -X (bljohnso - Novitex at Cisco)
**Sent:** Monday, July 22, 2019 1:56 PM
**To:** nw-sw-lobbyambassadors(mailer list) <nw-sw-lobbyambassadors@cisco.com>; bry22staff(mailer list) <bry22staff@cisco.com>; reception(mailer list) <reception@cisco.com>; Andrew Bartroff -X (abartrof - Novitex at Cisco) <abartrof@cisco.com>; Edward Montejano -X (emonteja - Novitex at Cisco) <emonteja@cisco.com>

**Cc:** Lonell Chattmon -X (lchattmo - EXELA TECHNOLOGIES INC at Cisco) <lchattmo@cisco.com>; Lilla S Walgraeve -X (lwalgrae - Novitex at Cisco) <lwalgrae@cisco.com>; Andrea Mercado -X (anmercad - Novitex at Cisco) <anmercad@cisco.com>
**Subject:** 7/22/19 Reminder - PAYROLL RELATED - URGENT - PLEASE READ IMMEDIATELY!
**Importance:** High

TEAM,

THIS IS VERY URGENT SO YOU ARE NOT AFFECTED when it comes to Payroll.  You must complete this today!!!

You do NOT need to complete the direct deposit form unless you are making a change.  Please let me know if you are making any changes and I will forward the DD form.

Effective July 22, 2019, Exela Enterprise Solutions, Novitex Government Solutions and Novitex Canada Services will be migrating from the current Novitex ADP Enterprise Version 5 (EV5) system to the Sourcecorp ADP Enterprise Version 5 (EV5) system. Since both companies use the EV5 system, there is no need for additional training. You will be able to navigate within the system the same way you do today. We have been working around the clock the past few weeks and months to make sure all your payroll balances are correct in the new system. There will be no change in your year-to-date payroll balances.

You will still only receive one W-2 form for 2019 at the end of the year. You may see slightly different names for specific earnings and deduction codes. We do need your help with this transition as follows:

1. All employees will need to re-register with ADP to obtain a @Sourcecorp login on Monday, July 22nd. Please refer to the attached instructions.

2. The Self-Service portal that you have been using up until now for direct deposit and W-4 tax changes will be temporarily unavailable starting Friday, July 19th . We anticipate the service to be back up & running for you by November 1, 2019. **During this time ALL direct deposit or tax exemption change requests that are usually completed using the ADP self-service portal will need to be emailed to Novitexpayroll@exelaonline.com no later than the Thursday preceding pay date and until such time that the self-service portal is available again.** For example: pay date August 9th , which includes pay period July 20th -August 2nd , changes will be due to payroll no later than August 1st to be included in the August 9th payroll. We will notify you once the self-service portal has been reinstated. We are including the link to download a 2019 Federal W4 if you need to change federal tax withholdings https://www.irs.gov/pub/irs-pdf/fw4.pdf as well as a link for changing state withholdings https://cdn-test.bls.gov/jobs/statetax.html.



**Brian L. Johnson**
**Service Delivery Manager**
Workplace Resources – Exela @ Cisco

755 Sycamore Drive
Milpitas, CA 95035
O: 1- 408-526-7195  C: 1-408-422-6412
bljohnso@cisco.com

supervisor regarding scheduling and reporting the extra break time as unpaid unless otherwise required by applicable law. Because exempt employees receive their full salary during weeks in which they work, and they are not normally required to identify break and meal times, all exempt employees who need lactation accommodation breaks do not need to report any extra break time as "unpaid."

The Company will provide employees with the use of a room or a private area, other than a bathroom or toilet stall, that is shielded from view and free from intrusion from coworkers and the public. The Company will make a reasonable effort to identify a location within close proximity to the work area for the employee to express milk. This location may be the employee's private office, if applicable.

Employees should discuss with HR the location for storage of expressed milk. Employees may also provide their own portable small storage unit or cooler for keeping expressed breast milk cold

Please be sure to contact HR during pregnancy or before returning to work to discuss the need for a lactation area and understand different lactation accommodations that may be applicable in different states.

Employees will not be discriminated against or retaliated against for exercising their rights under this policy.

# 4.5 Timekeeping

The Company complies with all applicable laws that require the Company to maintain records of the hours worked by employees. Accurately recording time worked is the responsibility of all non-exempt employees. Ensuring that employees are complying with time entry requirements is the responsibility of their immediate supervisors. Employees must record every minute worked, and failure to do so may result in disciplinary action up to and including termination. Time worked is the time spent on the job performing assigned duties. Altering, falsifying of an employee's time record may result in corrective action up to and including termination.

Employees should accurately record the time they begin and end their work, the times they spend on specific projects (if applicable), record all billable hours worked (as applicable), as well as the beginning and ending time of each meal breaks. All meal breaks must be taken according to Exela's meal breaks policy as well as applicable state and federal laws. Subject to applicable state or local law, a supervisor may not request an employee forgo the employee's meal breaks, and an employee should not request to forgo their meal breaks. Paid rest breaks must also be taken in accordance with Exela policy. Employees are responsible for recording the beginning and ending time of any split shift or departure from work for personal reasons.

Non-exempt employees must be "clocked" in for or otherwise report any time that an employee is working, regardless of when or where the work occurs. The Company pays for all time the employee spends performing work for the Company. Non-exempt employees who do work from home, which includes time spent on electronic devices for work purposes, must record all time worked outside the office. For all exempt employees, any and all billable hours worked must be recorded. It is never acceptable for a non-exempt employee to work "off the clock" or to "volunteer" to work without recording the time spent working. "Off-the-clock" work is time spent by an employee performing work that is not reported to the Company as time worked. This practice is against Company policy, and failure to comply may result in disciplinary action up to and including termination. It is also never acceptable for any supervisor to ask an employee to work "off the clock" or for any supervisor to allow an employee to work "off the clock". Should anyone request an employee to perform work while not on the clock or to incorrectly report hours, rest breaks or meal breaks, speak to HR or call the Employee Hotline at 1-800-258-0716. This duty to report exists even if the requestor is a supervisor or another leader. The Company prohibits any retaliation or reprisal against employees for making good-faith reports of this nature.

# Exhibit G

matter to the immediate attention of their supervisor or HR at HumanResources@exelaonline.com or at 2701 E. Grauwyler Road, Irving, Texas 75061.

Employees may also report concerns at any time using the following three reporting lines:

> Exela Ethics Hotline Phone Number (toll free): 1-800-258-0716

> Exela Ethics Hotline website: www.exelatechhotline.com

> Speak UP!® : visit https://corporate.gospeakup.com

Written complaints can be submitted internally using the form provided with this policy.

If the employee makes a complaint under this policy and has not received an initial response within five (5) business days, the employee should contact the Senior Vice President, Human Resources, Americas and EMEA immediately.

Every supervisor who learns of any employee's concern about conduct in violation of this policy or our Equal Employment Opportunity Policy, whether in a formal complaint or informally, or who otherwise is aware of conduct in violation of this policy must immediately report the issues raised or conduct to the Senior Vice President, Human Resources for the Americas and EMEA or to any other member of HR.

## Investigation Procedures.

Upon receiving a complaint, the Company will promptly conduct a fair and thorough investigation into the facts and circumstances of any claim of a violation of this policy or our Equal Employment Opportunity Policy to ensure due process for all parties. To the extent possible, the Company will endeavor to keep the reporting employee's concerns confidential. However, complete confidentiality may not be possible in all circumstances. Employees are required to cooperate in all investigations conducted pursuant to this policy.

During the investigation, the Company generally will interview the complainant and the accused, conduct further interviews as necessary and review any relevant documents or other information. Upon completion of the investigation, the Company will determine whether this policy or our Equal Employment Opportunity Policy has been violated based upon its reasonable evaluation of the information gathered during the investigation. The Company will inform the complainant and the accused of the results of the investigation.

The Company will take corrective measures against any person who it finds to have engaged in conduct in violation of this policy or our Equal Employment Opportunity Policy, if the Company determines such measures are necessary. These measures may include, but are not limited to, counseling, suspension, or immediate termination. Anyone, regardless of position or title, whom the Company determines has engaged in conduct that violates this policy or our Equal Employment Opportunity Policy will be subject to discipline, up to and including termination. This includes individuals engaging in discrimination, harassment or retaliation, as well as supervisors who fail to report violations of this policy or our Equal Employment Opportunity Policy, or knowingly allow prohibited conduct to continue. Individuals who engage in conduct that rises to the level of a violation of law can be held personally liable for such conduct.

Remember, we cannot remedy claimed discrimination, harassment or retaliation unless you bring these claims to the attention of management. Please report any conduct which you believe violates this policy or our Equal Employment Opportunity policy.

**STATE OF CALIFORNIA**                                                          Gavin Newsom, Governor
**DEPARTMENT OF INDUSTRIAL RELATIONS**
**Labor Commissioner's Office**
Retaliation Complaint Investigation Unit
2031 Howe Avenue Suite 100
Sacramento, CA 95825
Tel: (916) 263-2991
Email: retaliation@dir.ca.gov



September 9, 2019

HARRIS WINNS
1320 FOXDALE LOOP APT 202
SAN JOSE, CA 95122

Re: HARRIS WINNS v. Novitex Enterprise Solutions, Inc.
    State Case No. RCI-CM-696069

Dear HARRIS WINNS,

We are closing our investigation of the retaliation complaint you filed with the Labor
Commissioner's Office on May 13, 2019. This is to advise you that no further action will be
taken by this office because:

> You expressly withdrew the complaint.

While your case has been closed with this office, you are advised that you may be able to bring
an action against the employer in civil court to pursue your retaliation claim. You may wish to
consult an attorney to determine your rights and the deadlines for filing a civil action.

Sincerely,


Alejandro Cortez
Industrial Relations Representative
Retaliation Complaint Investigation Unit


cc:      Novitex Enterprise Solutions, Inc.



FILED

SEP 2 4 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

**CERTIFICATE OF SERVICE**

I, Harris L. Winns certify that on this 24th day of September, 2020, I caused/sent a copy of the
Plaintiff's Complaint for damages to the Attorney/Representative for
Exela Enterprise Solutions Inc. at the address listed below via USPS Priority mail:

ATTORNEY for Exela Enterprise Solutions Inc.:
Justin Heinrich
Asst. General Counsel
Exela Enterprise Solutions Inc.
300 First Stamford Place
Second Floor West
Stamford, CT. 06902


Harris L. Winns