Harris L. Winns
1320 Foxdale Loop #202
San, Jose CA. 95122
*Plaintiff, Pro Se*

# United States District Court For the Northern District of California
## Oakland Division

**HARRIS L. WINNS**
Plaintiff, an Individual
vs.
**EXELA ENTERPRISE SOLUTIONS, INC.**
Defendant, Automation of Business Processes

Case No.: 20-cv-06762-YGR

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

### MEMORANDUM OF POINTS AND AUTHORITIES
### MOTION FOR SUMMARY JUDGMENT

COMES NOW, the Plaintiff, Harris L. Winns, in *Pro Se* status, who moves for summary judgment on all of the claims in this retaliatory, discrimination, defamatory and equal pay Complaint pursuant to Fed. R. Civ. P. 56. Even further, the Plaintiff submits this motion to demonstrate to the Court that there are no genuine issue(s) of material fact in this case and therefore, that Plaintiff Winns is entitled to summary judgment as a matter of law.

This motion is based upon and supported by the following memorandum of points and authorities, the pleadings and papers on file in addition to exhibits as well.

### PROCEDURAL HISTORY

After submitting numerous complaints to Exela/Novitex's so-called Ethics department regarding a plethora of discriminatory acts; that ranged from an individual within upper

management, intentionally manipulating Mr. Winns' accrual of hours, to refusing to pay him equally or fairly as it is done regarding white citizens, in addition to "uttering" to a government agency that the Petitioner was under investigation for reasons unbeknownst to him in a retaliatory and defamatory fashion. Calif. Labor Code § 1102.5(b), USC § 1981(a), 42 USC § 2000e-2(m), Defamation (libel or slander) Cal. Civ. Code § 44; *see also id.* §§ 45–46.

Therefore, on May 8th, 2019, Plaintiff Winns filed an Equal Pay complaint and subsequently, a retaliation complaint as well, with the State of California's Department of Industrial Relations Labor Commissioner's Office, hereafter, (Labor Commission).

Fast forward to September 4th, 2019, at approximately 3:00pm, Mr. Winns telephoned the Labor Commissioner's office for an updated status regarding his submitted complaint and left a voice message to that effect.

On the following morning of September 5th, 2019 at approximately 8:45am, Mr. Winns received a returned voice message from the Commissioner's office. <u>The personnel from the Commissioner's office</u> stated within her voice message at 00:18 seconds mark the following:

- ➢ "Once your claim is assigned to a Deputy, you'll receive a copy of the (Exela's) response, with a copy of the Deputy's contact information."

In regards to the same message, the following is then uttered at the 00:32 seconds mark:
- ➢ "At this point in the investigation, you are anonymous, for that claim, not for the <u>retaliation claim though</u>."

Under California law, "[t]he tort of defamation 'involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.'" *Taus v. Loftus*, 151 P.3d 1185, 1209 (Cal. 2007) (quoting 5 B.E. Witkin, *Summary of California Law* § 529, at 782 (10th ed. 2005)). Defamation may be effected by either libel or slander. Cal. Civ. Code § 44; *see also id.* §§ 45–46. (*Kaufman v. Federal Insurance Company*, Ninth Cir. June 2020).

Mr. Winns was never informed of being "involved" an investigation as it was uttered by the unknown Labor Commissioner's personnel. Therefore, and once again, Defendant Exela has expressed itself through an act of conspiracy, through its agents, in a manner incongruent with their own said investigation policies; policies of the EEOC relative to investigations and the laws of the United States mentioning "conspiracy" as well. 42 USC 1985(3). So much so, and so frequent, that a reasonable person could easily construe their collective behavior as teetering on the brink of being considered as voluntary lawbreaker(s).

Due to the slow processing of Mr. Winns' complaint and the secret investigation initiated by Defendant Exela, the Plaintiff expressly withdrew his complain from the Labor Commission Office on September 9th, 2019.

On or about September 24th, 2019, the Plaintiff filed a discrimination, defamation, retaliation and harassment complaint with the Equal Employment Opportunity Office (EEOC) in San Jose, CA.

On September 25th, 2019, the EEOC formally charged Defendant Exela Enterprise with violation California's Equal Pay Act and "discrimination" in general.

On or about November 15th, 2019, Defendant Exela replied to the EEOC's "discrimination" charge. Through Exela's then legal representative, one Justin Heinrich stated in most relevant part: "Based upon the foregoing, the Company respectfully submits that Complainant's allegations of a violation of the Equal Pay Act are without merit. The Company has treated Complainant in a lawful manner at all times. Accordingly, the Company respectfully requests that the meritless Charge be dismissed for lack of reasonable cause."

On April 7th, 2020, the Plaintiff received the following email from Lisa Fung, EEOC Investigator, which stated in most relevant part: "As you are aware, the statement of position in this matter was sent to you, and you were invited to provide a rebuttal response to the employer's position, to include any additional supporting information or documentation you wanted considered as part of the investigation of your charge.  If you provided a rebuttal

submission, this information and documentation was received and made a part of the EEOC's investigative file in this matter."

"Based upon an analysis of your charge, the EEOC was unable to establish a violation of its statutes as you had alleged in your charge. My recommended disposition of this matter will now be forwarded for internal management review. If EEOC management concurs with my recommendation after final review, our office will be terminating its investigation into your allegations and your charge will be dismissed."

On September 24th, 2020, the Plaintiff filed this discrimination complaint at the Northern District Court of California's Oakland Division.

## FEDERAL STANDARD FOR MOTIONS FOR SUMMARY JUDGMENT

Pursuant to Rule 56(a), "a party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion."

Summary judgment is "an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment serves the important purpose of avoiding "useless and expensive litigation" by "dispos[ing] of factually unsupported claims or defenses." *Volunteer Elec. Co-op. v. Tennessee Val. Auth.*, 139 F. Supp. 22, 24 (E.D. Tenn. 1954) *aff'd sub nom. Volunteer Elec. Coop. v. Tennessee Valley Auth.*, 231 F.2d 446 (6th Cir. 1956).

Under Federal Rule of Civil Procedure 56, on motion of a party, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

On summary judgment, "[w]hen the moving party does not have the burden of proof on the issue, he need show only that the opponent cannot sustain his burden at trial." *Calderone v. U.S.*, 799 F.2d 254, 259 (6th Cir. 1986). Moreover, a moving party is entitled to summary judgment if

he or she can show there is no triable issue of material fact and is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A triable issue exists only if the non-moving party offers sufficient evidence that allows a reasonable trier of fact to find for it. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, as modified (July 11, 2001). Additionally, Fed. R. Civ. P. 56(c)(1)(A)(B), when the non-moving party [Exela] bears the burden of proof at trial, as Defendant does here, "the moving party [Plaintiff] need <u>only prove</u> that there is an absence of evidence to support the non-moving party's case" *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325). "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.,* 943 F.2d881, 883 (8th Cir. 1991). FRCP 56(a).

Interestingly enough, the highest court in the lad once concluded: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570 (2007)).

Needless to say, it is quite difficult, if not altogether impossible, for Defendant Exela to "state a claim to relief that is plausible on its face," when the Respondent here has failed to properly Answer the Plaintiff's complaint through a heap of so-called affirmative defenses, which were actually negative defenses for all intents and purposes. In short, the Defendant have placed themselves in a position where they're metaphorically attempting to push a boulder upwards on the side of a mountain, which has a high probability of them being unsuccessful.

Therefore, based on the evidence already submitted here, there is no genuine dispute of material fact as to the issues identified below and therefore, the Plaintiff is entitled to judgment as a matter of law. FRCP 56(a).

## I.
## THERE IS NO GENUINE DISPUTE OF FACT THAT THE PLAINTIFF WAS UNLAWFULLY DISCRIMINATED AGAINST BASED ON RACE/ANCESTRY – SECTION 1981

Defendant Exela Inc. either knew, or should have know that Petitioner Winns, as an Indigenous person of America, (erroneously referred to as African-American-Black) and therefore, has ancestral ties to the American soil; "shall have the same right in every State and

Territory . . . to make and enforce contracts . . . security of persons and property as is enjoyed by white citizens"; which are even "protected against nongovernmental discrimination," pursuant to 42 USC Section § 1981(a)(c).

The Respondeat superior, which is, Exela Inc., cannot evince that a discriminatory motive was not the "but-for" cause for their collective of adverse employment actions and inactions taken against Mr. Winns, that appears to have been calculated to make him quit; but they've erroneously believe that Defendant Exela wouldn't eventually having to pay a price for their discriminatory deeds. The Plaintiff, on the other hand, has clearly demonstrated on multiple occasions that his Indigenous race/ancestry was one of the "motivating factor(s)", (42 USC § 2000e-2(m), in addition to "but for" causation, which were the driving determinants behind the adverse actions and inactions taken. However, on the other hand, Defendant Exela still cannot demonstrate that it would have taken the same adverse action in the absence of the impermissible "motivating factor" and "but for" root cause, had the employee been Caucasian/White.

Moreover, not even one term ago, the U.S. Supreme Court stated: Section 1981 "is the "ancient and simple 'but-for' common law causation test." --"To prevail, a plaintiff must initially plead and ultimately prove that, 'but-for' race, it would not have suffered." (*Citing Comcast Corp. v. National Association of African American Owned Media, March 2020)*. And thus, through Defendant Exela's unlawful trampling of Mr. Winns rights, he was subsequently deprived of economic property due to his race/Indigenous ancestry. Clearly, these are uncontroverted, material facts.

Interestingly enough, ("[Racial or ethnic] imbalance is often a telltale sign of purposeful discrimination; absent explanation, it is ordinarily to be expected that nondiscriminatory hiring practices will in time result in a work force more or less representative of the racial and ethnic composition of the population in the community from which employees are hired."). *See Diaz v. Am. Tel. & Tel.*, 752 F.2d 1356, 1363 (9th Cir. 1985)

**WINNS V. EXELA INC.**
**MOTION FOR SUMMARY JUDGMENT**

Defendant Exela has clearly deprived the Plaintiff and has unlawfully discriminated against Mr. Winns based on disparate treatment regarding race and ancestry, in violation of Title VII of the Civil Rights Act of 1964, 42 USC §§ 2000e-2 *et seq.*, Calif. Gov't Code 11135(a).

## II.
## THERE IS NO GENUINE DISPUTE OF FACT THAT THE PLAINTIFF WAS RETALIATED AGAINST BY DEFENDANT CALIF. LABOR CODE 1102.5 *et seq.* - 42 USC 2000e-3(a)
### Discrimination / Defamation

Defendant Exela Inc. have violated California Government Code § 12940, by failing to adequately supervise, control, discipline and/or otherwise penalize the conduct, acts, and failures to act as described herein. And as such, it was a clear failure on the part of Defendant Exela Inc. to fulfill their statutory duty "to take all reasonable and necessary steps to prevent discrimination, harassment, and retaliation from occurring" in the workplace as required by California Government Code § 12940(h)(k).

It is clearly <u>protected activity</u> for an aggrieved individual to file a complaint with a government agency, who reasonably believes that he or she was discriminated or retaliated against for doing as such. (42 USC §§ 2000e-2, 2000e-3(a) *retaliation*).

Shortly thereafter, Defendant presumably and collectively without coercion, took it upon themselves to falsely report to California's Labor Commission that the Plaintiff was under some type of "investigation," according to a Labor Commissioner's personnel (*electronic recording will be submitted to the court shortly*). The so-called "investigation" is in fact an "<u>adverse employment action</u>" that was made under false pretense that Defendant Exela knew was entirely fabricated in an attempt to "intimidate" and "hinder" the processing of the Plaintiff's prima facie complaint at the Commissioner's Office. USC § 1985(2)(3), Calif. Govt'. Code § 12940(h)(k).

**Respondent Exela has Failed to Adduce Non-Discriminatory Reasoning in Reply to The Plaintiff's Complaint Through Non-Responsive, Inadequate Answers and So-called Affirmative Defenses.**

Even further, Mr. Winns' protected activity of filing an equal pay complaint against the Defendant, it appears, was undoubtedly a substantial, "motivating factor" (USC 2000e-2(m)) or reasoning for Exela to "utter" a defamatory (libel or slander) statement to a Commissioner's Office personnel. (Cal. Civ. Code § 44; *see also id.* §§ 45–46.). This unlawful retaliatory act committed by Exela, while knowingly and intentionally made a false statement that most certainly brought harm to the Plaintiff's reputation and caused him to be shunned as well. (See *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 232 [152 Cal.Rptr.3d 392, 294 P.3d 49]; *Alamo v. Practice Management Information Corp*. (2013) 219 Cal.App.4th 466, 479 [161 Cal.Rptr.3d 758];

Additionally, "The Supreme Court has extended the continuing violation doctrine to retaliation claims. And the doctrine also applies to racial harassment claims. Indeed, as we observed in *Morgan v. Regents of University of California, supra*, 88 Cal.App.4th 52, 65: 'Cases alleging a hostile work environment due to racial or sexual harassment are often found to come within the continuing violations framework.' "(*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 270 [100 Cal.Rptr.3d 296].

### III.
### THERE IS NO GENUINE DISPUTE OF FACT THAT THE PLAINTIFF WORKED IN A HOSTILE ENVIRONMENT

At all times mentioned here, Mr. Winns kept upper management abreast of the hostile conduct of Manager Brian Johnson, through the submission of numerous complaints to Respondent Exela's so-called Ethics Department.

On the morning of January 15th, 2019, I spoke to someone from the IT unit and was given instructions on how to unsubscribe from the shipping department's email. Shortly prior to lunch, and while in the process of unsubscribing from the shipping department, Brian approached my desk. He wanted to show me how to unsubscribe from the shipping department's aliases. The Plaintiff was still receiving a large amount of email from the previous department that he was no longer assigned to. I told him that I would take care of it because I was given instruction relative to unsubscribing. However, Brian then insisted. I again told him that I would take care of it.

Inexplicably strange, Brian then said to me in a confrontational tone of voice: "Well, you don't have to have an attitude about it." I then told Brian that it was merely his perception regarding my simple reply denying his offer to assist me and that I did not respond to him with an attitude.

Later that afternoon, Brian sent me the following email attempting to re-label or in the alternative, re-categorize the narrative by referring to our near argument that was initiated by him as simply a "conversation." In fact, it would be farfetched or a stretch of one's imagination to claim that it was a mere "conversation" as Brian recalled.

@4:11pm Brian replied: "Hello Harris, In my conversation with you this afternoon, you will need to do this task in the Cisco CEC mailer Page. As I'm not the owner of the alias your speaking of, I will show you on Wednesday on how to achieve this task. In the meantime, you can always filter your email based on the sender (Me).
Thanks, Brian

**It Is Undisputed That Manager Johnson Harassed, Created A Hostile Work Environment, Intimidated and Attempted to Provoke the Plaintiff**

Here, Brian attempted to "intimidate a witness or parties [Indigenous/race/ancestry] to a legal action (Section 2 of the Ku Klux Klan Act, now codified at 42 USC § 1985) or perhaps even provoke Petitioner Winns into something beyond a near argument. Mr. Winns was made to feel very uncomfortable and Brian's conduct was unwelcome, as there was no one else in the immediate vicinity of the mailroom. The Petitioner's even temperament is what kept this incident from escalating into something more serious, perhaps even physical. This is a clear violation of Calif. Gov't Code 12940(j) ["Harassment of an employee, an applicant due to race, religious creed, color, national origin, ancestry"].

To determine whether the conduct was sufficiently severe or pervasive, "[w]e must consider all the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Davis, 520 F.3d at 1095 (quoting Harris, 510 U.S. at 23). "The required level of severity or seriousness 'varies inversely

with the pervasiveness or frequency of the conduct.'" Nichols v. Azteca Rest. Enters., Inc., 256 F.3d 864, 872 (9th Cir. 2001) (quoting Ellison, 924 F.2d at 878)).

## IV.
## THERE IS NO GENUINE DISPUTE OF FACT THAT THE PLAINTIFF WAS HARASSED CALIF. GOV'T CODE § 12940 / 42 USC § 2000e-2

Defendant Exela Inc, including its agents, harassed Plaintiff by treating him differently due to his race in violation of California Fair Employment and Housing Act, California Government Code 12900, *et seq*. At all times, Plaintiff Winns was an employee within the meaning of California Government Code § 12926 and at all times during his employment, he performed in a competent, satisfactory manner as his performance reviews will attest.

Defendant have engaged in other discriminatory and harassing practices against Plaintiff that are not yet fully known. At such time, as such discriminatory practices become known to him; Plaintiff will seek leave of Court to amend this Complaint in that regard.

Defendant Exela had actual and constructive knowledge of the conduct described within the paragraphs above. But yet, Defendant Exela still failed to comply with their statutory duty to take all reasonable and necessary steps to eliminate discrimination and harassment from the workplace and to prevent it from occurring in the future.

Defendant Exela held an obligation and still does, to cease intentional discrimination and harassment directed at Plaintiff Winns or any other employee for that matter. Mr. Winns has sustained and he continues to sustain loss of earnings, due to arbitrary and whimsical conduct of Respondent Exela Inc.

Additionally, California's Supreme Court has concluded the following relative to harassment claims: "the continuing violation doctrine to retaliation claims. And the doctrine <u>also applies to racial harassment claims</u>. Indeed, as we observed in *Morgan v. Regents of University of California, supra*, 88 Cal.App.4th 52, 65: 'Cases alleging a hostile work environment due to racial or sexual harassment are often found to come within the continuing violations framework.' "(*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 270 [100 Cal.Rptr.3d 296], internal citations omitted.)

Additionally, even singular acts; which on its face may not constitute or may be viewed as harassment. However, these same accumulative acts when compounded and weighed as a whole, constitutes harassment or "prohibited conduct." (See *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1052–1056 [32 Cal.Rptr.3d 436, 116 P.3d 1123].) Or the case may involve acts that, considered alone, would not appear to be adverse, but could be adverse under the particular circumstances of the case. (See *Patten v. Grant Joint Union High School Dist.* (2005) 134 Cal.App.4th 1378, 1389–1390 [37 Cal.Rptr.3d 113]

## V.
## THERE IS NO GENUINE DISPUTE OF FACT THAT THE PLAINTIFF WAS THE TARGET OF A WELL ORGANIZED CONSPIRACY TO INTIMIDATE, OBSTRUCT JUSTICE AND INTERFERE WITH PLAINTIFF'S CIVIL RIGHTS

In order to survive a Section § 1985(3) are as follows: a plaintiff must show: (1) a conspiracy; (2) a racial or class based discriminatory animus in furtherance of the conspiracy; (3) an intent to deprive any person of the equal protection of, or equal privileges and immunities under, the law; and (4) a resulting injury to a legal right or property or deprivation of any right.

The paid agents of Defendant Exela Inc., obviously held their plan in mind; collectively participated through execution thereof; conspired, colluded and collaborated in an attempt to intimidate; subsequently Exela manufactured a conspiracy through a ruse investigation, of which the Plaintiff was intentionally not notified, pursuant to Exela's own written policy. (*Exela's Employee Handbook page #09*)

Secondly, Defendant then notified California's Labor Commission's office that Mr. Winns was under an "investigation." The retaliatory investigation appears to have been initiated shortly after the Plaintiff filed an equal pay complaint with the Labor Commission. 42 USC §§ 2000e-3(a), Calif. Labor Code 1102.5(b). This supposed "investigation" in which the Plaintiff was the subject, was in fact "false and unprivileged." And as a direct result, the Plaintiff has suffered and subsequently was "injured" emotionally and "injured in his occupation [reputation and economic bias]" as well. Calif. Civ. Code § 46.

## VI.
## THERE IS NO GENUINE DISPUTE OF FACT THAT

## THE PLAINTIFF WAS HARMED DUE TO EXELA'S INTENTIONALLY NEGLIGENT SUPERVISION OF ITS EMPLOYEES

First and foremost, Defendant Exela Inc. had authority to supervise their employees and/or agents and thus, inform all said employees of the potential legal liability that the company could sustain as a result discrimination/retaliatory acts.

Plaintiff Winns is informed and believes and thereon alleges that Defendant Exela either knew or reasonably should have known that their failure adequately to supervise their employees created the risk of potential legal liability, by those employees, of the wrongful conduct alleged herein, but that Defendant's upper management failed to take appropriate corrective action to cease the harassment and other discriminatory conduct. These acts were clearly incongruent with various statutes, State, federal and including the company's written policies as well.

Plaintiff Winns is informed and believes and thereon alleges that Defendant's failure to take appropriate corrective action resulted in the commission of the wrongful conduct alleged herein, and subsequently, needlessly caused Mr. Winns to suffer emotional injury, reputational damage and economic loss or harm.

More to the point, "California case law recognizes the theory that an employer can be liable to a third person for negligently hiring, supervising, or retaining an unfit employee." (*Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038, 1054 [58 Cal.Rptr.2d 122].) "Negligence liability will be imposed on an employer if it 'knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes.' "(*Phillips v. TLC Plumbing, Inc.* (2009) 172 Cal.App.4th 1133, 1139 [91 Cal.Rptr.3d 864].)

It is quite vivid, that with Manager Brian Johnson being in the position in which he held, and still holds today, that Defendant Exela either knew or should have know that there was a high propensity that Brian would eventually violate company policy and in the process, violate the Plaintiff's civil rights as well, due to negligent supervision and/or retention.

And thus, Defendant Exela's "negligence is established if a reasonably prudent person would foresee that injuries of the same general type would be likely to happen in the absence of [adequate] safeguards." "(*D.Z. v. Los Angeles Unified School Dist*. (2019) 35 Cal.App.5th 210, 229 [247 Cal.Rptr.3d 127] "Liability for negligent supervision and/or retention of an employee is one of <u>direct liability for negligence</u>, not vicarious liability." (*Delfino v. Agilent Technologies, Inc.* (2006) 145 Cal.App.4th 790, 815 [52 Cal.Rptr.3d 376].)

## VII.
## THERE IS NO GENUINE DISPUTE OF FACT THAT THE DEFENDANT NONCHALANTLY RATIFIED THE CONDUCT OF THEIR MANAGERS THROUGH NEGLECT - *CA. CIV. CODE § 2339*

On countless occasions, Defendant Exela was presented with the opportunity to adjust the conduct of its Managers and Human Resources Business personnel (Brian Johnson, Cherine Morris and Betty Smith), by the Plaintiff's submitted grievances, but instead, acquiesced for reasons unbeknownst to Mr. Winns. Therefore, the Defendant must now suffer the consequences of their actions and inactions.

And as California courts have correctly and collectively concluded in regards to an employer's condoning or "ratification" of an employee's behavior: "An employer may be liable for an employee's willful and malicious actions under principles of ratification."(*Civ.Code, § 2339; Rest.2d, Agency § 218*.) An employee's actions may be ratified after the fact by the employer's voluntary election to adopt the employee's conduct by, in essence, treating the conduct as its own. (*Rakestraw v. Rodrigues (1972)* 8 Cal.3d 67, 73, 104 Cal.Rptr. 57, 500 P.2d 1401; see also Judicial Council of Cal. Civil Jury Instrns. (2006) CACI No. 3710.) The failure to discharge an employee after knowledge of his or her wrongful acts may be evidence supporting ratification. (*Coats v. Construction & Gen. Laborers Local No. 185* (1971) 15 Cal.App.3d 908, 914, 93 Cal.Rptr. 639.)

Without a shadow of doubt, Defendant Exela should be held vicariously liable under the doctrine of respondeat superior. "In general, an employer will be vicariously liable based on the doctrine of respondeat superior if its employee's acts were committed within the course and scope of his or her employment." *Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Ass'n.*, 298 F.3d

768, 775-76 (9th Cir. 2002) (citing Rest. 2d Agency § 219 (1958)). (Citing Bunnett & Co. v. Gearheart, Ninth Cir, 2018)

## VIII.
## THERE IS NO GENUINE DISPUTE OF FACT THAT THE DEFENDANT VIOLATED THE EQUAL PAY ACTs AT THE STATE AND FEDERAL LEVELS - CALIF. CIV. CODE 1197.5 - 29 USC § 206(d)(1)

Moreover, it also appears as if the Defendant's plan was to obstruct and impede continuously, the Petitioner's equal pay endeavor in order for the process to reach its maturation period, and thereby, defeat the Petitioner's purposes so that in all likelihood, he wouldn't be able to collect. ("Willful violation may be commenced no later than three years after the cause of action occurs.") California Labor Code § 1197.5 (4)(i).

In most relevant part, California's EPA states the following:

Calif. Labor Code § 1197.5 (a) An employer shall not pay any of its employees at wage rates less than the rates paid to employees of the opposite sex for substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions, except where the employer demonstrates: (1) The wage differential is based upon one or more of the following factors: (A) A seniority system. (B) A merit system. (C) A system that measures earnings by quantity or quality of production.

However, at the federal level, the "Lilly Ledbetter Fair Pay Act of 2009" was passed by Congress under the President Obama administration. This Act "restores the pre-*Ledbetter* position of the EEOC that each paycheck that delivers discriminatory compensation is a wrong actionable under the federal EEO statutes, regardless of when the discrimination began. In short, each discriminatory pay check delivered resets the statute of limitations' running of the clock.

Interestingly enough, Defendant Exela still hasn't announced a sound reasoning or an affirmative defense to as to why a gap existed between Mr. Winns and Ms. Clemente pay rates.

Clearly, and pursuant to 29 U.S.C. § 206(d)(1), Respondent Exela is incapable proving that they've implemented, "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex."

Moreover, Defendant Exela has failed here as well, because nothing has been presented by Exela that would persuade a reasonable person to believe that "sex", was in fact <u>not</u> the primary reason for the pay rate disparity. On the other hand, Respondent Exela "becomes presumptively liable once the plaintiff has established the existence of a pay gap in which he or she is paid less than workers of the opposite sex."*Corning Glass*, 417 U.S. at 195. (*Citing Rizo v. Fresno Co. Superintendent of Schools*, 2018, 9th Cir.)

## **CONCLUSION**

For the foregoing reasons, and since there is no genuine dispute of fact, the Court should grant the Plaintiff's motion for summary judgment on all of the issues specified herein above.

Even further, this honorable Court has given the Defendants sufficient opportunities to "properly support or address a fact", [Rule 56(e)] but yet, the Defendant has failed to submit anything of supposed "material" effect that would cause the Court a moment of pause, reconsideration or to bethink. In all likelihood, perhaps Defendant Exela is incapable of doing so.

Additionally, the Defendant has failed miserably to proffer or articulate non-discriminatory reason(s) under the McDonnell Douglas burden shifting framework as it relates to Plaintiff's Title VII disparate treatment claims as expressed within the original complaint and other subsequent documents s well.

Respectfully submitted,

X _____
Harris L. Winns
Pro Se

Monday, Jan. 5th, 2021